487 P.2d 170

**Manuel D. DURAN, Plaintiff-Appellee,**

v.

**The NEW JERSEY ZINC COMPANY, Defendant-Appellant.**

**No. 549.**

Court of Appeals of New Mexico.

May 7, 1971.

Rehearing Denied June 1, 1971.

Writ of Certiorari Issued June 25, 1971.

Neil E. Weinbrenner, R. E. Riordan, Las Cruces, for appellant.

J. W. Reynolds, Robertson & Reynolds, Silver City, for appellee.

## OPINION

DEE C. BLYTHE, District Judge.

Although defendant-appellant raises 16 points, mostly concerned with substantial evidence to support the trial court's findings of fact, the principal issue is whether the statute of limitations for filing a workmen's compensation claim is tolled while the workman remains employed in the same job by the same employer with no reduction in pay, but could not perform many of the duties of the job. From a judgment for the workman, the employer (a self-insurer) appeals. We reverse.

With certain differences which we deem immaterial, this case is on all fours with Cordova v. Union Baking Company, 80 N. M. 241, 453 P.2d 761 (Ct.App.1969). The applicable statute of limitations depends on when the cause of action accrued, and this in turn depends on when the workman became partially disabled under § 59–10–12.19 which reads:

"As used in the Workmen's Compensation Act * * * 'partial disability' means a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical

and mental capacity and previous work experience."

The injury in this case occurred November 13, 1963. At that time the statute of limitations for filing a workmen's compensation claim was contained in Laws of 1963, ch. 269, § 6, which read in part:

"A. If an employer or his insurer fails or refuses to pay a workman any installment of compensation to which the workman is entitled under the Workmen's Compensation Act, after notice has been given as required by Section 59–10–13.4, New Mexico Statutes Annotated, 1953 Compilation, it is the duty of the workman, insisting on the payment of compensation, to file a claim therefor as provided in the Workmen's Compensation Act, not later than one year after the failure or refusal of the employer or insurer to pay compensation. This one-year period of limitations shall not be tolled during the time a workman is employed by the employed [sic] by whom he was employed at the time of such accidental injury."

The last sentence quoted above was changed by Laws of 1967, ch. 151, § 1, now compiled as § 59–10–13.6(A), N.M.S.A. 1953 (Supp.1969), to read as follows:

"* * * This one [1] year period of limitations shall be tolled during the time a workman remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one [1] year. * * *"

■ Duran, the workman in this case, left his employment with New Jersey Zinc Company on October 23, 1968, and the claim was filed on February 3, 1969. Since plaintiff was required to file his claim under the foregoing limitation statute (within one year of the failure or refusal to pay compensation) we must determine when the failure or refusal to pay occurred. It thus becomes necessary to examine the trial court's findings of fact pertaining to accrual and the evidence supporting such findings.

The crucial finding, which is challenged by the employer, is as follows:

"10. All physicians who treated the plaintiff for the accidental injury described herein released plaintiff to return to his full employment duties. It did not become and should not have become reasonably apparent to plaintiff that he had an injury on account of which he would have been entitled to Workmen's Compensation benefits."

Another, and somewhat inconsistent, finding of the trial court then follows:

"11. Plaintiff's accidental injury on November 13, 1963, *was serious and continued serious through 1968*, but at no time did defendant fail or refuse to make compensation payments or furnish medical benefits." (Emphasis added.)

It is apparent from two memorandum opinions filed by the trial judge that he was most concerned with the last clause of finding no. 11, however. His first memorandum opinion was against the workman, but this opinion was withdrawn by the second on the strength of Noland v. Young Drilling Company, 79 N.M. 444, 444 P.2d 771 (Ct.App.1968), where we said:

"* * * As soon as it becomes reasonably apparent, or should become reasonably apparent * * * to a workman that he has an injury on account of which he is entitled to compensation *and* the employer fails or refuses to make payment he has a right to file a claim and the statute begins to *run from that date*. There is nothing in the act as we read it which indicates that the running of the statute may be delayed until a more serious disability is ascertainable." (Emphasis by trial court.)

■ In *Noland* no workmen's compensation was paid, and nothing in *Union Baking* indicates that such payment is a sine qua non although this factor was there present. After all, payment of workmen's compensation, terminated by the workman's resuming full-time employment for his regular wages, hardly could be construed as "failure or refusal of the employer or in-

surer to pay compensation", within the meaning of § 59–10–13.6(A), supra. Here no demand for payment was made until October 29, 1968. The workman left the job October 23, 1968, after he had been told by the assistant superintendent that he would have to do the work assigned to him "or else." The workman apparently considered this the same as being discharged, since he could not do many of the assigned tasks. A few days later the union chairman told him he would be discharged if he didn't return, and he refused on the ground that he couldn't do the work.

Duran would date the "failure or refusal * * * to pay" from either October 23 or October 29, 1968. Even if, as contended by Duran, he was in effect discharged on October 23, this would be a refusal to pay further wages, rather than workmen's compensation.

Thus we are brought back to the question of when it became reasonably apparent, or should have become reasonably apparent, to Duran that he had a compensable injury. In finding number 10 quoted above, and in the trial court's memorandum opinion, it is apparent that the court thought that the workman was entitled to rely entirely on the fact, as found, that "All physicians who treated the plaintiff for the accidental injury described herein released plaintiff to return to his full employment duties." This finding is challenged, since only one physician testified that he did so and the workman testified repeatedly that all the doctors gave him "light duty slips" when he returned to work. However, this makes no difference in the complete absence of any testimony that the workman relied on the doctors' releasing him to full employment duties, if they did so, in not demanding compensation or filing his claim sooner than he did.

Duran testified repeatedly that from the time he returned to work on January 4, 1964, he could not do many tasks required of him and other employees in the position of Mechanic No. 1; that he had to get his fellow employees to help him with heavy lifting, pulling, and climbing tasks in the mine; that his right shoulder had never ceased to cause him pain since the date of injury; that he frequently had to use his left hand instead of his right hand to pull on big wrenches; and that from 1963 to 1968 he had requested light duty but it had been denied him by his superiors. As the trial court found, his original injury "was serious and continued serious through 1968." His condition steadily worsened until, as found by the court below, he was totally disabled. Obviously, it was reasonably apparent to Duran that he was partially disabled to work for New Jersey Zinc Company as a Mechanic No. 1, on and after January 4, 1964, and he could have filed his claim then.

■ There remains the question of whether Duran was "unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience," the second part of the partial disability definition of § 59–10–12.19(B), supra. The trial court found:

> "12. Plaintiff is over 55 years of age, had a grade school education and has earned his livelihood by heavy, manual labor and is not qualified to perform any other type of work * * * and * * * is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience."

He had worked for New Jersey Zinc Company 22 years between 1937 and 1968 and practically continuously since 1955. His other work experience was limited to such jobs as ranch hand, cowboy, and mule skinner—all jobs requiring ability to do heavy work. It is obvious that his injuries disabled him from doing these jobs to the same degree, if not more, than he was disabled from working as a Mechanic No. 1 for New Jersey Zinc Company, since the latter job had some light duties which he could perform.

The court below appears to have placed some reliance on the fact that the employer paid for two operations, one on October 21, 1963, and another on February 14, 1968. As pointed out in Garcia v. New Mexico State Highway Department, 61 N. M. 156, 296 P.2d 759 (1956), payment of medical benefits is not payment of an "installment of compensation" within the meaning of § 59–10–13, now § 59–10–13.-6(A), supra, such as would toll the running of the statute of limitations.

It follows from what has been said that the judgment of the court below must be reversed and remanded with instructions to dismiss the complaint.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.