ESSEX COUNTY CIRCUIT COURT.

FRANK RESTAINO, PLAINTIFF, v. BOARD OF COMMIS-
SIONERS OF THE CITY OF NEWARK, DEFENDANT.

Decided April 22, 1938.

For the defendant, *James F. X. O'Brien.*

For the plaintiff, *Maurice Schapira.*

JOSEPH L. SMITH, C. C. J.   This action was instituted
under the Uniform Declaratory Judgment law (*Rev. Stat.*
1937, 2:26-67), whereby plaintiff seeks determination of
his status and rights with respect to his demand for a pen-
sion from the defendant, the city of Newark, under *Rev.
Stat.* 1937, 43:12-1, which provides as follows:

"A person who has been continuously in the employ of any
city for a period of twenty-five years and has reached the age
of seventy years, may retire or be retired at any time there-
after.   On and after retirement he shall be paid by the city
one-half of the amount he was receiving as salary from the
city at the time of his retirement.

"Nothing in this section shall in any way affect the pro-
visions of chapter 16 of this title (sections 43:16-1 *et seq.*)."

Chapter 16 of title 43, mentioned in the above act, refers to pension of firemen and policemen, which does not concern us at the present moment.

The facts pertinent to the case have been submitted by stipulation and are, briefly, as follows:

Plaintiff was first employed by the defendant on April 2d, 1910, as laborer, and was twice promoted thereafter. He worked from the day of his employment, continually on to June 26th, 1936, except when weather conditions did not permit of such employment, the work being dependent upon suitable conditions. During the period from April 2d, 1910, to June 26th, 1936, plaintiff has not been employed by any other person. His name was carried on defendant's payrolls as an employe with civil service rating as a permanent laborer, but he was paid for the time he actually worked. He retired June 26th, 1936.

The question at issue is one of law; namely, the interpretation to be given the statute mentioned above, and more particularly to the phrase "continuously in the employ of any city for a period of twenty-five years."

The plaintiff, reckoning the full period from April 2d, 1910, to June 26th, 1936, contends he has been employed by the defendant for more than the twenty-five years required. The defendant, on the other hand, contends that plaintiff's employment amounted to a period 19.86 years, on the ground that during the term above noted, plaintiff was actually employed "about seventy-five per cent. of the time, due to seasonal work."

It does not appear by what method of calculation the defendant concludes that the plaintiff was employed "seventy-five per cent. of the time." By what units and on what basis is the ratio of seventy-five per cent. computed? Does it mean nine months of regular and usual work followed by three months of cessation of work each year? Or, does it mean actual working days throughout each year equal to seventy-five per cent. of the total business days of the year? Or, does it mean an aggregate of working days throughout the

entire period, equal to seventy-five per cent. of the total business days of that period? What is defendant's conception of a year's employment? Is it three hundred and sixty-five days of labor, or fifty-two successive weeks of five working days each, or twelve successive months of employment?

The question is, what meaning did the legislature intend to give to the phrase "continuously in the employ—for twenty-five years." To ascertain that meaning, we must consider the general purposes and objectives of the measure, and the consequences which would follow the construction or interpretation advanced by the contending parties. No case has been referred to by either counsel which is directly in point, and the court's research has disclosed none. There are, however, certain general principles and rules enunciated pertaining to pension laws which assist in arriving at a rational conclusion. Thus, in *Rollins* v. *Hauman,* 43 *Pac. Rep.* (*2d*) 147, the rule is given that where literal meaning of a statute would result in great inconvenience, or lead to absurdity, courts must presume that such consequences were not intended and adopt construction promoting ends of justice and avoiding absurdity.

And in *Douglas* v. *Pension Board of the City of Sacramento,* 242 *Pac. Rep.* 756 (*Cal.*), (at *p.* 757), the court said this, concerning the purpose and objectives of such statutes:

"The considerations upon which a government adopts, as a part of its administrative policy, a system for the pensioning of those who have continuously, for a specified period of years, served the government in the performance of public civil duties, both as officers and employes, are, in a large measure, these: (1) To encourage those public officers or employes who have by experience or otherwise demonstrated peculiar fitness for the performance of the public services to which they have been assigned to continue in the service of the government and at all times faithfully discharge the duties involved in such service. The hope held out for future additional reward or compensation for their public services to that which they receive concurrently with the period during

which they are actually and actively engaged in performing such services is conducive to uniform faithfulness to and efficiency in discharging the duties which their offices or employments have exacted. (2) To safeguard or insure such officers or employes against a possible condition of penury and want, when, after giving the best part of their lives both in point of time of service and ability to the service of the public, they are no longer able to perform, to the degree required, labor of any character or kind. A more just and humane consideration of the class or classes of persons for whom such a provision is made by a government can hardly be conceived. Indeed, the justness of a pension system for the benefit of those who, after long service, must be retired from old age or disability is now so far recognized that it has even become the uniform custom with private corporations to maintain a reasonably framed and well regulated system of retirement pensions for the benefit of those of their employes who have been in their service continuously for a specified number of years, or to a time when by reason of their advanced age or physical disability they are no longer able, with the efficiency required, to perform the particular duties demanded by such service.

"(1) While, of course, no public officer or employe is entitled as of right to be granted a pension, still, when a government has adopted a retirement pension system, it should be so administered as to bring about the efficacious results which it is intended to produce. It should not be so construed and administered as to confer its benefits upon those not actually entitled thereto, nor so that those so entitled should be denied their just rights thereunder."

Applying the above principles to the instant case, it is apparent that an application of defendant's interpretation would lead to absurd conclusions. If we give the word "continuous" its absolute meaning, then, no day laborer can ever earn a pension, for his "employment" will be broken by Saturdays, Sundays and holidays, when he does not work, and for which he receives no wages; under such a strict construc-

tion, it would be just as logical to maintain that the employment of a wage earner is interrupted by Saturdays, Sundays and holidays, as to maintain that it is interrupted by workless days caused by weather conditions.

In order to avoid such an absurd conclusion, we must give to the word "employment" the meaning not of work and services, but of an office or commission, indicating the existence of the relationship of master and servant.

It is conceded by the parties in the case, that at no time during the period above mentioned, was the plaintiff discharged from office, or did he voluntarily quit his employment or services. Therefore, although it may be true that his actual physical working for the city for compensation, by the hour or by the day had been interrupted by seasonal slack periods, nevertheless, his employment with the city was continuous and uninterrupted.

Judgment: plaintiff is declared to be entitled to pension from the defendant, the city of Newark, under and by virtue of the Revised Statutes of 1937, title 43, chapter 12, article 1.