DORAN NEWBERRY, APPELLANT AND CROSS-APPELLEE, V. CHET YOUNGS, DOING BUSINESS AS TRI STATE LIVESTOCK COMMISSION COMPANY, APPELLEE AND CROSS-APPELLANT.

80 N. W. 2d 165

Filed December 14, 1956.  No. 34088.

*Morrison, Lyons & Starrett,* for appellant.

*Charles E. McCarl,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is a compensation case in which plaintiff ap-

peals and defendant cross-appeals. The appeal presents two questions:

Was the plaintiff's contract of hire such as to cause compensation to be calculated on the formula prescribed by section 48-126, R. S. Supp., 1955, for a continuous employment relationship? The trial court held that it was, and we affirm that holding.

Was the plaintiff entitled to recover the reasonable cost of transportation from his home to the doctor's office and to the hospital for medical care and treatment? The trial court denied the claim. We find it to be an allowable claim under the provisions of section 48-120, R. R. S. 1943.

The cross-appeal presents the contention that the trial court erred in allowing recovery of the cost of eyeglasses and shoes under the provisions of section 48-120, R. R. S. 1943. We find that the claim for eyeglasses should have been denied and the claim for shoes allowed in part.

The contract of hire was verbal. It is not in serious dispute. The defendant conducts a livestock sale barn at McCook. Sales are normally held every Saturday. On occasion special sales are held on other days.

Plaintiff testified that in April 1955, he worked for defendant 2 hours as a cattle sorter and was paid therefor in cash. The following Saturday he returned and sought work and none was available.

On May 21, 1955, plaintiff again asked for work, was employed by defendant, and agreed to work regularly thereafter on Saturdays, unless notified otherwise, which he did each Saturday down to and including August 13, 1955, the date of the accident involved here. The agreed pay was to be $1 an hour for the number of hours worked. The hours varied depending on the volume of the sales. Plaintiff was paid at the close of each day he worked. He received a total payment of $70 for the period so employed.

Plaintiff went to the defendant's sale barn each Sat-

urday and went to work without reporting to the defendant and without other contract of hire. He knew where he was supposed to work, and he went there and did the work. He was to continue to do that at every regular sale until further notice or agreement.

Plaintiff was required to work on other days for special sales, if called upon. It does not appear that such work was required during the period involved.

The above in substance recites the contract of hire and the compensation paid.

The trial court held that the plaintiff had been continuously employed to work for defendant from May 21, 1955, to August 13, 1955, and calculated the amount of compensation based on the provision of section 48-126, R. S. Supp., 1955, which provides in part: "In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour or by the output of the employee, his weekly wages shall be taken to be his average weekly income for the period of time ordinarily constituting his week's work, and using as the basis of calculation his earnings during as much of the preceding six months as he worked for the same employer."

The question presented here is the correctness of the determination of continuous employment. The amount of the award is not challenged if that determination is found to be correct. We have applied this statute in a number of cases.

The plaintiff cites here and relies upon Davis v. Lincoln County, 117 Neb. 148, 219 N. W. 899; Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220; Weitz v. Johnson, 143 Neb. 452, 9 N. W. 2d 788; and Gruber v. Stickelman, 149 Neb. 627, 31 N. W. 2d 753.

Defendant cites and relies on Johnsen v. Benson Food Center, 143 Neb. 421, 9 N. W. 2d 749, and Redfern v. Safeway Stores, Inc., 145 Neb. 288, 16 N. W. 2d 196.

It does not appear that we have undertaken directly

to define the term "continuous employments" except in Davis v. Lincoln County, *supra,* where we held that it existed "only when service or labor required in the performance of the contract service is substantially continuous." We there related the term to the contract of hiring but left the meaning of continuous rather indefinite.

Applicable here is the definition in United States v. Morris, 14 Peters 464, 10 L. Ed. 543: "To be 'employed' in anything, means not only the act of doing it, but also to be engaged to do it; to be under contract or orders to do it."

Romig v. Champion Blower & Forge Co., 315 Pa. 97, 172 A. 293, was a workmen's compensation case. There the statute provided: "In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour, or by the output of the employee, his weekly wages shall be taken to be five and one-half times his average earnings at such rate for a working day, and using as a basis of calculation his earnings during so much of the preceding six months as he worked for the same employer * * *."

The language of the act is the same as section 48-126, R. S. Supp., 1955, except as to the method of calculating the weekly wage.

In that case the employee worked 2 days a week. The court held: "The employment is continuous in that the status of employer and employee persists between the parties even though no work is done on a particular day. Claimant worked only two days a week, and was paid by the day, but a new contract of hiring was not created each week. In other words, the employee was not discharged after each day's work and reemployed when the foundry resumed operation. He was simply paid each week on the basis of the number of days on which the plant was operated. His employment was continuous, although the days on which work was per-

formed were broken in sequence through no fault of his own."

In Garnsky v. Metropolitan Life Ins. Co., 232 Wis. 474, 287 N. W. 731, 124 A. L. R. 1489, the court said: "When we reach the term 'continuous employment' it is the natural assumption that this refers to employment that has not been terminated or interrupted during the prescribed period, and that layoff does not, of itself, so interrupt or terminate."

In Restaino v. Board of Commissioners, 16 N. J. Misc. 266, 198 A. 765, it was held that employment implied the relationship of master and servant. In that case the court held that where the paintiff had not voluntarily quit his employment and had not been discharged his employment was continuous although the actual physical working by the hour or day had been interrupted by seasonal slack periods.

In In re Monroe's Executors, 132 Misc. 279, 229 N. Y. S. 476, the court held: " 'Continuously' does not necessarily mean working every day. A person may have 'continuous' use of a stream of water—it is not necessary to use it every hour or every day. A corporation may have paid dividends 'continuously' for many years, and the payment may have been once, twice or four times per annum. So a person may work for another 'continuously' three days a week, four days a week, or all the week. It means a continuous period of employment, continuous character of service—not consecutive days of labor."

Accordingly we hold that the term continuous employments in section 48-126, R. S. Supp., 1955, relates to the contract of hiring and is applicable to those situations where the relationship of employer and employee is a continuing one. It does not depend in its application on the number of hours an employee works in a day or the number of days an employee works in a week. Those questions go to the matter of the per-

formance of the contract and not to the nature of the contract.

Although it does not appear that we have heretofore so stated the rule, it does appear that as our decisions have progressed we have followed that rationale and construction in applying the statute.

In Redfern v. Safeway Stores, Inc., *supra,* we had a contract for part-time services where the contract was continuous under the above rule. We applied the statute after reviewing our former decisions.

In Gruber v. Stickelman, *supra,* we had a case where the employee was hired for a day at a time when help was needed. We held that it was not continuous employment.

Plaintiff points out that under the contract of hiring he was required to work on days other than Saturday for special sales, if called upon. That situation existed in the Redfern case. It was a provision of the contract of hiring. It did not change the continuous employment nature of the contract.

Accordingly we hold that the trial court did not err in applying the formula in the statute here involved in determining the compensation rate.

Plaintiff argues further that the result is inequitable and unjust. It often happens that the result of following a statutory plan of compensation has that effect upon one or the other of the parties. The remedy, however, is legislative and not judicial. It is axiomatic that plaintiff's right to recover at all depends on bringing his cause within the provisions of the act.

As a result of the accident plaintiff had the bones in his lower left leg broken. The injury, occurring on August 13, 1955, was severe. Plaintiff was taken to the hospital where "traction" was put on the leg. On August 24, 1955, an "open reduction" of the fracture was made, a plate was put in, and the leg placed in a cast. He was discharged from the hospital September 19, 1955. He returned to the hospital on September

21 for a dressing of the leg through a window put in the cast. Thereafter the doctor saw the plaintiff at "frequent intervals," the last time being on April 14, 1956. The doctor does not testify as to the dates or number of the "frequent" calls. The plaintiff testified, without contradiction, that because of the difficulty in climbing steps to the doctor's office, he quite often went to the hospital for dressings.

The leg was still in the cast on November 18, 1955, when it was examined by a specialist. It was then measured for a brace which plaintiff was wearing on January 5, 1956. At that time there was swelling in the left foot and restricted motion of the foot and ankle. It was then determined that the bone plate could be removed. The plate and screws were removed in January. The patient was wearing the brace on March 19, 1956, and at that time quite a bit of swelling remained and there was irritation about the operative area and some drainage from the incision. We recite this history to show the continuing need of medical care.

Defendant paid travel expense of the plaintiff to Lincoln on two occasions to secure specialist attention.

Plaintiff lives 11 miles from McCook. He testified that on occasions when his wife was unable to drive or their car was unavailable he hired a neighbor to take him to McCook to the doctor and to the hospital for the purpose of having his leg treated and dressed. He testified that he made in all 29 or 30 trips. He claimed compensation at $3 a trip for 29 trips, which the evidence shows without dispute were made. It also appears without dispute that $3 a trip was a reasonable charge.

Section 48-120, R. R. S. 1943, provides: "The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, subject to the approval of the compensation court, not, however, to exceed the regular charge made for such service in similar cases * * *."

The compensation court allowed the claim for cost of transportation for $87.

The trial court denied recovery.

Defendant urges a denial of these expenses on the authority of Goliat v. Butler Consolidated Coal Co., 155 Pa. Super. 254, 38 A. 2d 727. In that case the facts as to the necessity of the travel were quite different from those here. Also the Pennsylvania statute had originally specifically required the payment of transportation costs and that part of the act had been repealed.

In Huhn v. Foley Bros., Inc., 221 Minn. 279, 22 N. W. 2d 3, the court construed a statute requiring the employer to furnish medical and other care. The court held that the purpose of the statute would be defeated if the employee were denied reimbursement for expenses incurred in travel reasonably necessary to make medical service available. See, also, Scruggs Bros. & Bill Garage v. State Industrial Comm., 94 Okl. 187, 221 P. 470.

Accordingly we hold that section 48-120, R. R. S. 1943, making the employer liable for reasonable medical and hospital services, includes the cost of travel incident to and reasonably necessary for obtaining such services.

Although the dates of the trips and the services performed on each trip do not appear, the record clearly sustains a finding that the travel was reasonably necessary to obtain medical service for which defendant was liable.

The trial court should have allowed plaintiff's recovery in the claimed amount and erred in not doing so.

This brings us to defendant's cross-appeal.

It also involves section 48-120, R. R. S. 1943. At the time of plaintiff's accident his eyeglasses fell to the ground and were broken. There is no claim that he suffered an eye or a head injury in the accident. He did not immediately replace the eyeglasses. Headaches developed. He was examined and no skull or eye injury was found. He purchased new eyeglasses at a

cost of $29. He claimed payment for the eyeglasses and the trial court ordered defendant to pay for them.

Need for eyeglasses is not the test. The burden placed upon the employer by section 48-120, R. R. S. 1943, is designed to relieve or cure the physical injuries suffered by the employee. We see no more reason to require the defendant to pay for eyeglasses under the circumstances here than there would be to pay the cost of cleaning or repairing clothing soiled or torn in an accident. The trial court erred in allowing the claim for the eyeglasses which were destroyed.

As a result of the injury plaintiff's left ankle and foot swelled appreciably. That condition continued into the time when the doctors desired that he begin to use the foot to restore the proper functioning of the foot and leg. It was also necessary that he have a shoe of soft leather and that the prescribed leg brace be attached to it. It was also necessary to build the heel up five-eighths of an inch to relieve pain. Plaintiff's old shoe would not fit and was not suitable. At the doctor's instruction he purchased a pair of shoes in order to get one suitable for use on the left foot. It was fitted with the brace and heel. He also bought a second pair of shoes in order to get a different size shoe for the right foot. The shoes cost $41.90. The trial court ordered the defendant to pay the cost of the two pairs of shoes.

The new shoe for the left foot was deemed necessary by the doctors to relieve and assist in the cure of the physical injuries suffered by the employee. We think the trial court should have and did properly allow the cost of the one pair of shoes. From the evidence here we must conclude that that cost was $20.95. There is no evidence that plaintiff required a new shoe for the right foot for any reason connected with his injury. The second pair was required for the purpose of plaintiff having a matching shoe for the right foot. That may be a quite proper purpose but the statute puts no burden on the defendant to pay the cost. The item

for shoes should have been allowed only in the sum of $20.95.

The judgment of the trial court is affirmed in part, and in part is reversed and the cause remanded with directions to render a decree in accord with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.