631 P.2d 328

**Ramon GONZALES, Plaintiff-Appellee and Cross-Appellant,**

v.

**BATES LUMBER COMPANY, A Self-Insured Employer, Defendant-Appellant and Cross-Appellee.**

**No. 4726.**

Court of Appeals of New Mexico.

April 28, 1981.

Certiorari Denied July 10, 1981

David W. King, Threet & King, Albuquerque, for defendant-appellant and cross-appellee.

Richard J. Crollett, Roybal & Crollett, Albuquerque, for plaintiff-appellee and cross-appellant.

## OPINION

HERNANDEZ, Chief Judge.

In this workmen's compensation case, defendant appeals from a judgment in favor of plaintiff which adjudged plaintiff to be temporarily totally disabled since October 27, 1977. In addition to weekly benefits, medical expenses, rehabilitation expenses and attorney's fees, the plaintiff was awarded $1,639.82 for travelling expenses incurred in connection with medical treatments that he received.

■ Defendant's first point of error is that plaintiff's failure to lose weight constituted a refusal to receive medical treatment. Section 52–1–51(G), N.M.S.A. 1978, provides in pertinent part:

If any workman shall persist in any unsanitary or injurious practice which tends to imperil, retard or impair his recovery or increase his disability or shall refuse to submit to such medical or surgical treatment as is *reasonably essential* to promote his recovery the court may in its discretion reduce or suspend his compensation. [Emphasis added.]

The dictionary definition of "essential" explains: "[F]undamental, vital, and cardinal all imply maximum importance, indispensability, and necessary priority in considerations, plans, or discussions. * * * Cardinal may refer to the decisive or conclusive since it may suggest that on which an outcome hinges or pivots[.]" Webster's Third New International Dictionary 777 (1961).

The plaintiff is approximately five feet five inches in height and at the time pertinent to this appeal weighed about 185 pounds. Dr. K. W. Harvie, an orthopedic surgeon who saw the plaintiff on several occasions, testified that on July 11, 1978, "[h]e was continuing to have pain. He had lost twenty-two pounds, his back continued to hurt." Dr. Harvie also testified that the ideal weight for plaintiff would be between 135 pounds and 145 pounds and that it was not a dangerous procedure to lose weight. Dr. G. N. Gold, a neurological surgeon who examined plaintiff on several occasions, was asked "[i]f he lost down to 135 to 140 pounds now, do you think that would affect his physical ability to return to work?" The pertinent part of his answer was as follows: "I don't believe that just losing weight, if he did that without any change in mental attitude—which, of course, is impossible—would necessarily make a difference. I mean, fat people don't have backaches necessarily any more than skinny people." Dr. M. G. Rosenbaum, an orthopedic surgeon, first saw plaintiff on September 17, 1979. He was asked if plaintiff got his weight down to 130 pounds, would this resolve his back problems. His answer was that: "It would make little difference—the lost weight would make little difference in the back condition." Dr. Rosenbaum was also asked if plaintiff could get his weight down to 140 or 130 pounds would he be able to "perform the tasks of his former or past occupations." His answer was: "That it would make no difference." Dr. N. F. Moon, an orthopedic surgeon who saw the plaintiff on several occasions, was asked: "Assume Mr. Gonzales got down to the weight you would like to see him at, would that cure his radiculopath?" He answered: "If he got it down to a truly normal weight

for his height, I do not think that the radiculopathy should improve." He was also asked: "Doctor, you said that if Mr. Gonzales got his weight down to an acceptable level, he could return to work doing his regular duties. Now, would you go so far as to put that in a written guarantee?" His answer was: "No, sir, I would not."

This evidence amply supports the trial court's findings and conclusions that it was not "reasonably essential" for the plaintiff to lose weight in order to promote his recovery, i. e., plaintiff's failure to lose weight was not unreasonable. *See Rhodes v. Cottle Construction Co.*, 68 N.M. 18, 357 P.2d 672 (1960).

Defendant's second point of error is that the trial court erred in awarding travel expenses to and from the places where medical treatment was rendered. The trial court found that plaintiff incurred travel expenses in the sum of $1,639.82. Plaintiff resides at San Ysidro, New Mexico, a distance of approximately 53 miles from Albuquerque, where medical treatment was rendered. The record shows that plaintiff made 91 trips into Albuquerque totaling 9,646 miles. However, no evidence was introduced as to the actual expenses incurred. The sum awarded by the trial court computes out to $.17 per mile.

Section 52–1–49(A), N.M.S.A. 1978, provides:

After injury, and continuing as long as medical or surgical attention is reasonably necessary, the employer shall furnish all reasonable surgical, physical rehabilitation services, medical, osteopathic, chiropractic, dental, optometry and hospital services and medicine unless the workman refuses to allow them to be so furnished.

As can be seen, this section of the Workmen's Compensation Act does not specifically provide for travel expenses incident to medical treatment. The question then presented is whether such provision can be implied from this language. We believe that it can. The only case in which this question was considered on the appellate level was *Hales v. Van Cleave*, 78 N.M.

181, 429 P.2d 379 (Ct.App.1967). This opinion did not decide the question of the authority of a trial court to award such expenses. It was decided solely on the basis of the failure of proof, as this excerpt will attest:

He [workman] cites absolutely no authority for his contention that he was entitled to be reimbursed for these claimed expenses.

The trial court refused the requested finding tendered by plaintiff, and concluded that plaintiff is not entitled to reimbursement for travel expenses. Since the trial court refused the requested finding by plaintiff, upon whom rested the burden of establishing the amount of these expenses and his right to recover the same, if they were in fact properly recoverable, this amounted to a finding against plaintiff on this issue. *Id.* at 186, 429 P.2d at 384.

"[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. Indiana*, 338 U.S. 49, 52, 69 S.Ct. 1347, 1348, 93 L.Ed. 1801 (1949). We know that the distances many injured workmen have to travel for medical treatment are considerable. This is so because of the size of this state and because certain necessary medical treatment is available at only a few places in the state. We also know that the cost of travel is not inconsequential and is rising yearly. We conclude that reasonable travel expenses necessarily incurred in receiving medical treatment do come within the language of § 52–1–49(A), *supra.* Of course, each case is to be decided on the basis of its peculiar facts and merits. Turning then to the instant situation, we see the following: The trial court found that "[a]s a result of receiving medical treatment and medical evaluations for his job related injuries and aggravated injuries, plaintiff incurred transportation expenses in the amount of $1,639.82." We have previously outlined the facts which led to this conclusion and it is our opinion that they are sufficient to support it.

Defendant's third point of error is that the trial court erred in finding that the plaintiff's disability commenced on or about October 27, 1977. The pertinent findings of the trial court are the following:

5. Subsequent to his accidental injury of October 28, 1976, plaintiff continued to perform the regular and usual tasks of his employment with defendant, and in the interim lost approximately twenty-three weeks from work due to his injury, and for which absence plaintiff was voluntarily paid workmen's compensation benefits by defendant in the amount of $114.61 per week.

6. Except for the aforementioned twenty-three weeks that plaintiff was absent from work, he continued to work for the defendant performing the regular and usual tasks of his employment until approximately October 27, 1977, at which time plaintiff was unable to continue working due to the injuries he sustained as a result of his October 28, 1976, on-the-job accident.

"[W]e are bound to view the evidence, together with all inferences reasonably deducible therefrom, in the light most favorable to support the findings. All evidence unfavorable to the findings must be disregarded and no unfavorable inferences will be drawn." *Oberman v. Oberman*, 82 N.M. 472, 473, 483 P.2d 1312, 1313 (1971).

[I]f the claimant suffers an accident in the course of his employment which does not disable but ultimately leads to a later "malfunction of the body" resulting in disability, the continuing pain and degenerating ability to function constitute the operative "accident" which brings about the compensable "accidental injury" on the date of disability.

*Casias v. Zia Co.*, 93 N.M. 78, 79, 596 P.2d 521, 522 (Ct.App.1979). No useful purpose would be served by recounting the evidence. We have reviewed it and conclude that it fully supports the trial court's findings.

 Defendant's last point of error is that the trial court abused its discretion in awarding plaintiff attorney's fees in the amount of $5,500.00. The record does not reflect that there was a hearing, or that either party requested a hearing, on the question of attorney's fees. The only thing that appears in the record is the affidavit of plaintiff's attorney setting forth in chronological order the time spent on this matter from initial interview through trial, totaling 131 hours and 15 minutes. The defendant's attorney submitted a document entitled "Controversion of Affidavit of Services Rendered" which recited that the total amount of time he spent in preparing and trying the case came to 72 hours. It went on to allege that much of the time spent was unnecessary "because the complaint was filed within an unreasonable time after the first written demand was made on defendant to resume Workmen's Compensation benefits." Attached to this document were copies of defendant's attorney's billing sheets.

Our Supreme Court in *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979), ruled that there must be evidentiary support for an award of attorney's fees and that in addition to the requirements of § 52–1–54(D), N.M.S.A. 1978, the following factors must be considered:

1. the relative success of the workman in the court proceedings: * * *.

2. the extent to which the issues were contested: * * *

3. the complexity of the issues: * * *.

4. the ability, standing, skill and experience of the attorney: * * *.

5. the rise in the cost of living: * * *.

6. the time and effort expended by the attorney in the particular case: * * *.

The trial court's findings state:

19. Plaintiff was required to employ counsel to secure benefits under the Workmen's Compensation Act.

20. Plaintiff's counsel expended considerable time and effort in the handling, preparation and presentation of plaintiff's workmen's compensation claim and was successful in securing workmen's compensation benefits for plaintiff.

21. Plaintiff should be awarded reasonable attorney's fees in the amount of $5,500.00 for the successful handling, preparation and presentation of his claim.

The attorneys' reports and the trial court's first-hand knowledge of the attorney's work on the issues and proceedings, and the outcome of that work, is sufficient evidentiary support for the award under *Fryar*. *Lopez v. K. B. Kennedy Engineering Co.*, 20 N.M.St.B.Bull. 315 (March 12, 1981); *Johnsen v. Fryar*, 19 N.M.St.B.Bull. 1024 (November 6, 1980).

 Plaintiff, in his cross-appeal, asserts there is not sufficient evidence to support the finding of temporary total disablement. The determination of the degree of disability is a question of fact for the fact finder; if there is substantial evidence to support the finding, this Court is bound thereby. *Adams v. Loffland Bros. Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). The trial court had before it the testimony of plaintiff and medical testimony of several doctors to use in determining the degree of disability. The testimony of at least two doctors was that plaintiff is temporarily totally disabled. There is relevant evidence in the record such as a reasonable mind would accept to support the finding and conclusion. Because we find substantial evidence to support the finding of temporary total disablement, we need not address plaintiff's remaining point regarding lump-sum payment of benefits.

Plaintiff is awarded the sum of $2,250.00 for the services of his attorney in this appeal. The judgment of the trial court is affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., concurs in part, dissents in part.

SUTIN, Judge, (concurring in part and dissenting in part).

I concur in affirmance of plaintiff's judgment and dissent on the matter of plaintiff's cross-appeal.

The trial court found that on October 28, 1976, plaintiff, 40 years old with an 8th grade education, employed by defendant as a field service man, suffered an accidental injury in the scope of his employment. Subsequently, plaintiff continued to perform his regular and usual tasks. Between October 28, 1976, and October 27, 1977, a period of one year, plaintiff lost 23 weeks from work for which defendant voluntarily paid plaintiff compensation benefits of $114.61 per week. As a result of the accidental injury, plaintiff became temporarily totally disabled as of October 27, 1977.

From October 27, 1977, through August 29, 1979, a period of 22 months, defendant paid plaintiff workmen's compensation benefits of $114.61 per week, but failed to pay medical and prescription expenses of $504.16, and transportation expenses of $1,639.82. Plaintiff is a good candidate for rehabilitation, will require future hospital and medical care and is entitled to $4,500.00 in attorney fees.

The court concluded that from October 27, 1977, the date the total disability began, through August 29, 1979, the date plaintiff's disability benefits were terminated, plaintiff was entitled to $142.59 per week instead of $114.61, and defendant was in arrears of $2,686.08, and from August 29, 1979, to April 7, 1980, defendant was in arrears of $4,420.29. Judgment was entered on May 6, 1980, in accordance with the decisions and defendant appealed. Plaintiff cross-appealed.

A. *In workmen's compensation cases this court can act as it desires.*

In *Rumpf v. Rainbow Baking Company*, No. 4795, decided March 12, 1981, Sutin, J., dissenting, this Court held that in workmen's compensation cases, it had jurisdiction to direct the deletion of "with prejudice" from a final judgment of a district court from which no appeal was taken, and, at the same time, held that an attorney, not the client, had the right to sue an employer for attorney fees. Certiorari was denied.

Employers and workmen are now in "a ding-dong battle"—"a fight in good earnest. Ding-dong is an onomatopoeic word reproducing the sound of a bell; and here the idea is that the blows fall regularly and steadily, like the hammer-strokes of a bell."

Brewer's Dictionary of Phrase and Fable (1970), p. 322. I prefer to call it a "wing-ding battle" in which the workman and an attorney can fly to victory without wings. The normal perimeters for protection of workmen and attorneys have been extended.

### B. Defendant's requested findings and conclusions are irrelevant.

Defendant's first point is that the trial court erred in refusing defendant's requested findings and conclusions. Defendant's requested findings seek judgment for defendant. Before defendant can move in this direction, it must show that the trial court's findings are not sustained by substantial evidence so that plaintiff is not entitled to an award of compensation benefits; therefore, defendant's requested findings and conclusions should have been adopted. If the trial court's findings are sustained by substantial evidence, defendant's requested findings and conclusions are irrelevant. *Castillo v. Tabet Lumber Company*, 75 N.M. 492, 406 P.2d 361 (1965). Absent a counterclaim, a judgment for and against a plaintiff cannot withstand logic and reason.

For related cases that involve a failure to make requested findings, see, *Save-Rite Drug Stores v. Stamm*, 58 N.M. 357, 271 P.2d 396 (1954); *Owensby v. Nesbitt*, 61 N.M. 3, 293 P.2d 652 (1956); *Wiggs v. City of Albuquerque*, 57 N.M. 770, 263 P.2d 963 (1953).

### C. The trial court properly awarded plaintiff transportation expenses.

The trial court found that:

As a result of receiving medical treatment and medical evaluations for his job related injuries and aggravated injuries, plaintiff incurred transportation expenses in the amount of $1,639.82.

Defendant does not question plaintiff's right to recover transportation expenses. Defendant claims only that this finding is not supported by any evidence.

The rule is established that transportation costs necessarily incurred in connection with medical treatment are compensable after proof of mileage, cost per mile and method of travel, even if the act, such as § 52–1–49(A), N.M.S.A. 1978, speaks only in terms of medical services and expenses. *Moreau v. Zayre Corp.*, 408 A.2d 1289 (Me. 1979) (without regard to whether employer has authorized trips); *Allor v. Belden Corp.*, 382 So.2d 206 (Ct.App.La.1980); *Eskridge v. Goldman & Co.*, 598 S.W.2d 425 (Ark.App. 1980) (must show method of travel); *Mosley v. Bank of Delaware*, 372 A.2d 178 (Del. 1977); *In re Snider's Case*, 334 Mass. 65, 134 N.E.2d 16 (1956); *Newberry v. Youngs*, 163 Neb. 397, 80 N.W.2d 165 (1956) (even though dates of trips and services performed on each trip are unknown); *Murry v. Southern Pulpwood Insurance Company*, 136 So.2d 165 (Ct.App.La.1962) (at so much per mile); *Dugas v. Houston Contracting Company*, 191 So.2d 178 (Ct.App.La.1966) (itemize and prove them); *Southall v. Kingsville Timber Company*, 168 So.2d 424 (Ct.App.La.1964) (visitation alone is not proof); *Mobley v. Jack & Son Plumbing*, 170 So.2d 41 (Fla.1964); 2 Larson's Compensation Law, § 61.13(b) (1981); 99 C.J.S. Workmen's Compensation § 226, p. 916 (1958).

Payment of transportation expense in *Mobley* was also a matter of first impression. The court said:

Considering the purposes of the Workmen's Compensation Act and the benefits to be given injured employees by its terms, we conclude that travel expenses necessarily incurred in enjoying the medical benefits provided by the Act are an incident of medical care and treatment. Therefore, the employer-carrier must either furnish such transportation or pay claimant the reasonable actual cost thereof. [Id. 47.]

Defendant claims the court's finding, supra, is not supported by evidence because (1) plaintiff never kept a record of his expenses on 91 round trips from San Ysidro, his home, to Albuquerque, location of doctors and hospital, ten of which were at defendant's request; (2) plaintiff never billed defendant for costs; (3) no evidence

appears of his actual costs, his costs per mile, or his total costs, i. e., whether he stopped over night or ate meals; (4) whether he used his car or borrowed someone elses. Defendant does not contend the doctor and hospital visits were not reasonably necessary.

Plaintiff testified that his wife drove him on these trips in his own car. He obtained evidence of the 91 trips from doctor and hospital bills. In mileage, the round trips are 106 miles. Of the 91 trips, 10 were visitations to defendant's doctors, and other doctors he went to were on his own. Plaintiff never gave defendant a bill for these trips and never kept track of his costs on these trips.

Transportation expense was computed as follows:

91 trips at 106 miles per trip equals ... 9,646 miles
17 cents per mile equals ............ $1,639.82

Public employees are allowed 19 cents per mile for each mile traveled in a privately owned automobile. Section 10–8–4(D), N.M.S.A. 1978. Prior to 1980 it was 17 cents per mile. That which is fair and reasonable for public employees is fair and reasonable for injured workmen. It would be unreasonable for injured workmen to save gas and oil tickets for a period of years and try to estimate how much was used for each trip, produce the tickets in court and put on a guessing game at trial or estimate how many miles per gallon the car would use; then produce expert testimony or speculate on the amount of depreciation of the car during each trip.

To avoid a pandemonium of objections and argument in court, a fixed rate of 17 cents per mile for each mile traveled is fair and reasonable for transportation expenses incurred by an injured workman. If an employer is concerned about any probability of excessive expenses, he can provide transportation whenever necessary or require notice and report of each trip made during the time that compensation is paid the injured workman. If compensation payments are not made and suit is filed, an injured workman, of course, has no duty in this respect if request is made. An employer must be cautious in dealing with injured workmen, especially uneducated common laborers who are unprepared or unable to protect their rights under the Workmen's Compensation Act. Every employer risks the payment of past compensation benefits, interest, attorney fees, expenses and costs in the trial and appellate courts. An employer can reduce the loss by investing the potential amount of the risk at a secured high interest rate.

The trial court properly awarded plaintiff transportation expenses.

D. *The trial court's findings and conclusions challenged were not erroneous.*

Defendant claims that findings 5, 6, 7 and 17, and conclusions of law 2 and 3 are erroneous. I am unable to understand defendant's position.

Summarized, these findings are that except for a 23 week period following his injury in October, 1976, until October 27, 1977, when plaintiff stopped working, plaintiff was able to perform his regular tasks and that the date of his disability commenced on or about October 27, 1977; that plaintiff became temporarily totally disabled on October 27, 1977.

The court concluded that plaintiff was totally disabled as of October 27, 1977, and plaintiff was entitled to benefits based upon the compensation rate applicable on the date of his disability which was October 27, 1977, and is entitled to arrearages for the same.

I assume that defendant seeks to have this Court find that the date of disability commenced on October 26, 1976, because the percentage of the average weekly wage for compensation was less in 1976 then in 1977. Sections 52–1–41 and 52–1–42, N.M.S.A. 1978. In 1976, the average weekly wage allowed plaintiff was $114.61 per week as compensation. In 1977, it rose to $142.59 per week.

The trial court found that from October, 1976, the date of the accidental injury, to October, 1977, except for 23 weeks of disability, plaintiff performed all of his usual tasks and was not disabled until October,

1977, when his work stopped because he was temporarily totally disabled. It necessarily follows that plaintiff was entitled to the increased weekly payment of $142.59.

Defendant is aware of the rule that the findings of fact, when supported by substantial evidence, cannot be disturbed on appeal. Defendant's position is that the rule applicable is stated in *Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977). *Boone* held that all reasonable inferences must be "indulged" *in support of the judgment.* Yet the evidence must be of such substance that facts will be established from which reasonable inferences may be drawn.

Defendant submits that the only reasonable inferences to be drawn is that plaintiff was disabled on October 26, 1976, because plaintiff suffered pain thereafter and did not perform his usual tasks; that to so hold is equivalent to taking words out of context in a sentence to get a desired meaning. What defendant seeks to do is draw inferences in its favor to the detriment of plaintiff. But we cannot "indulge" reasonable inferences against the judgment. We do so in support of the judgment. To reverse the rule of reasonable inferences that support the judgment is contra bonos mores (not in accordance with good manners).

The findings challenged were not erroneous.

E. *Plaintiff's cross-appeal should be affirmed in part and reversed in part.*

Plaintiff, in his cross-appeal claims that he was permanently totally disabled so that he could seek a lump sum award and that the attorney fee awarded him was insufficient for services rendered in the trial court.

(1) *Plaintiff is totally disabled permanently but not entitled to a lump sum settlement.*

Plaintiff has been totally disabled since October 27, 1977, and was totally disabled through the time judgment was entered on May 6, 1980, a period of 30 months. *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 590 P.2d 652 (Ct.App.1979). Unquestionably, plaintiff is permanently disabled. On the defini-

tion of "temporary disability," I add that which appears in *Pyles v. Triple F. Feeds of Texas, Inc.*, 606 S.W.2d 146 (Ark.App.1980). Omitting authorities cited, it reads:

Temporary disability is defined as the healing period following an injury. It exists until the employee is as far restored as the permanent character of his injury will permit. Temporary disability is a separate and distinct disability from any permanent disability and may be compensated separately * * * * temporary total disability benefits are payable without interruption from the time of the injury to the time at which the degree of permanent disability is ascertainable. [Id. 148.]

On March 17, 1980, the court found that plaintiff became temporarily totally disabled on October 27, 1977. That finding is correct but the trial court failed to make a finding of plaintiff's disability at the time of trial or at the time the decision was rendered.

This case should be remanded to the district court to make a finding whether plaintiff was temporarily or permanently disabled at the time of trial. The trial court omitted any reference to lump sum award.

Plaintiff requests this Court to give him a lump sum award. This cannot be done until the case is one of total permanent disability. Section 52–1–30(B), N.M.S.A. 1978. Even when this point is reached, to be granted a lump sum award rests within the discretion of the trial court. *Lane, supra; Lamont v. New Mexico Military Institute*, 92 N.M. 804, 595 P.2d 774 (Ct.App.1979). In effect, by its decision, the trial court exercised its discretion and denied plaintiff the right to a lump sum award.

Another reason plaintiff is not entitled to a lump sum award is that plaintiff did not petition the court for a lump sum award after hearing in which the court determined that it is a case of total permanent disability. Section 52–1–30(B).

If this case were remanded to the district court and a finding made of permanent total disability, then plaintiff could petition

the court to award a lump sum in accordance with the statute.

In my opinion, the trial court found temporary total disability in order to avoid granting a lump sum award.

(2) *Plaintiff is entitled to an increase in attorney fees awarded by the trial court.*

Plaintiff is entitled to a reasonable attorney fee for services rendered by his lawyer in the trial court. His lawyer is not. I am sure that plaintiff is satisfied but the lawyer is not. I am sure the plaintiff did not request the lawyer to seek an increase in the amount awarded. I am sure the lawyer seeks an increase on his own. Nevertheless, in *Rumpf*, this Court allowed plaintiff's lawyer to pursue an employer for an attorney fee. Upon what logical or reasonable basis is unknown.

The trial court found that plaintiff was entitled to a reasonable attorney fee but did not state any reason for this entitlement. The court did not consider the evidence presented in support of the amount of the fee. At least, the court did not so state in its decision. Where no reason is given, the court acts beyond the bounds of reason and abuses its discretion.

Based upon the evidence presented in support of a reasonable attorney fee, among other items, 131 hours were spent by the lawyer, success was had in the lawsuit which has a net value to plaintiff of $55,000.00, plaintiff is entitled to an additional attorney fee of $2,500.00.

Because of a cross-appeal, plaintiff was compelled to file two separate briefs in this Court, both of them excellent finished products. Plaintiff's lawyer should receive an attorney fee of $3,000.00 for services rendered in this appeal.