725 P.2d 1220

**Milton ROMERO, Plaintiff-Appellee,**

**v.**

**GENERAL ELECTRIC CORPORATION, Employer; and Electric Mutual Insurance Company, Insurer, Defendants-Appellants.**

**No. 8335.**

Court of Appeals of New Mexico.

May 8, 1986.

Certiorari Quashed Sept. 30, 1986.

Donnelly, J., concurred in result and filed opinion.

Mark D. Jarner, Rael & Jarner, Los Lunas, for plaintiff-appellee.

Joseph J. Mullins, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellants.

## OPINION

ALARID, Judge.

Defendants General Electric Corporation (GE) and Electric Mutual Insurance Company appeal from the judgment of the district court awarding plaintiff Milton Romero (Romero) total and permanent disbility workmen's compensation benefits. On appeal, GE raises three issues: 1) whether the stat-

ute of limitations is tolled indefinitely for a claimant who, after receiving workmen's compensation, returns to work in pain, subject to medically-imposed restrictions, and needing assistance to do part of his job; 2) whether where a notice defense is raised, the worker must prove that notice of the accident was given (aggravation issue); and 3) whether the rate of workmen's compensation pay for an accident is the rate in effect at the time the worker first became disabled as a result of that accident. We find no error by the trial court and affirm.

## FACTS:

Romero was employed by GE as a forklift (Hyster) operator at the time of the accident on June 24, 1981, when he injured his back. There is no dispute that Romero received a work-related back injury in 1981, for which he received compensation benefits from June 1981 to February 1982, when he returned to work. Beginning with the back injury in 1981, and continuing through the filing of this action, the following facts are important to our consideration of this appeal.

### June 24, 1981

Romero suffered injuries to his low back as a result of an accident arising out of, and within the course and scope of his employment with the defendant employer. Romero gave appropriate notice to the defendants of the accident.

As a natural and direct result of the accident and injuries of June 24, 1981, Romero was disabled and received all compensation and related benefits that he was entitled to until February 1, 1982.

### July 7, 1981

Dr. Keith Harvie, an orthopedic surgeon, began treating Romero for his back pain. Dr. Harvie diagnosed a chronic lumbosacral spine sprain. He later diagnosed a possible abnormal disc.

### October 30, 1981

Romero chose to have, and was given, an epidural injection of steroids which considerably improved his back pain.

### November 16, 1981

Romero's back was doing reasonably well. He had no leg pain at that time. He was continuing to have some pain below the belt line in his back. He had done well since having the epidural injection. He was able to straight leg raise to 90 degrees bilaterally.

Romero went on a three-day deer hunting trip in the mountains during which he did not have back problems.

### December 16, 1981

Romero continued to improve. He had some tenderness in his low back, but this was very minimal.

### January 26, 1982

Romero was having minimal discomfort. He was released to return to work as of February 1, 1982. Romero requested to be released to work because of how well he felt.

Because the steroid injection improved Romero's condition considerably, Dr. Harvie did not believe that the pain was significant enough to warrant surgery. Between forty-five and fifty percent of people who have epidural steroid injections do not require further treatment.

Dr. Scott Adler, who examined Romero at the defendants' request in 1985, found nothing to indicate that surgery was necessary in 1981 or in 1982.

### January 29, 1982

Nurse Harty, Dr. Harvie's nurse, indicated that Romero could return to work without any limitations.

### February 1, 1982–April 1984

Romero earned the same amount, or more money, after his return to work in February 1982 as before the accident in June 1981.

Romero worked overtime on a regular basis immediately after his return to work in February 1982. He would usually work every other Saturday, but would work overtime whenever it was available. Romero would often complain to his foreman that he wasn't given enough overtime.

Romero did not make any complaints of back pain or of inability to do his job to his supervisors before April 1984. Romero did not request or receive help from anyone else in order to do his job. He did everything required of a hyster and scooter operator. His attendance record was very good. Romero's job performance was not affected by his back problems until February or March 1984. He did not begin to complain about his back until March or April 1984. John Gianini, plaintiff's foreman from February 1984 on, was not even aware of Romero's back problem or weight restriction until March or April 1984.

Dr. Adler, based on his examination and findings, found it probable that Romero did not suffer enough pain between 1982 and 1984 to interfere with his job. Until March or April 1984, Romero did not need and did not receive the assistance of a back brace, a cane, medications, physical therapy, or chiropractic treatment.

Between June 1982 and March 1984, Romero did not return to see Dr. Harvie. Romero did not see Dr. Harvie during this time because he was feeling alright and only had occasional back pain, which was minor and did not interfere with his job.

Romero did not believe, while he was working full time, that he was disabled or that he might be entitled to both workmen's compensation benefits and a salary.

**June 2, 1982**

Romero returned to Dr. Harvie on June 2, 1982, because of a flare-up regarding his back. Up to that point, Romero was having very few problems with his back.

**June 8, 1982**

Romero talked to the company doctor, Dr. Frank Jones, at the request of someone from the company. Dr. Jones wrote a letter to Mr. Garcia of GE on June 8, 1982, six days after Romero saw Dr. Harvie, in which he stated that Romero's x-rays did not show any specific abnormalities, that Romero was taking Dolobid which was prescribed by Dr. Harvie on June 2, 1982, and that Romero was not on any other specific treatment program. Dr. Jones stated that

Romero's back exam was essentially normal except for voluntary moderate limited range of motion. He referred Romero to Dr. Phillip Martinez, in view of the fact that he could reach no specific diagnosis.

**June 9, 1982**

Romero returned to Dr. Harvie for a follow-up visit, at which time Dr. Harvie noted that Romero was considerably improved. Romero did not again see Dr. Harvie until March 1984.

**February 1984–the present**

Romero's back pain and leg pain became much more frequent and severe in February 1984. The pain progressed to the point that in April of 1984, Romero was no longer able to continue working. Romero has not been able to work since April 26, 1984, his last day at work.

Dr. Harvie's next examination of Romero, after June 1982, was on March 16, 1984. Dr. Harvie noted that Romero's condition was significantly worse since the last examination in June of 1982.

Dr. Harvie testified, in his deposition, that Romero's continued forklift driving, from February 1982 through April 1984, probably aggravated his back condition to the point where it became disabling in April 1984. The surface area outside the GE building on which Romero was required to drive his forklift was very rough. It is known that continued bouncing on a machine such as a forklift can aggravate previously existing back conditions. Romero recalls one specific incident, approximately in February 1984, during which he drove his forklift over a railroad track, making his back particularly painful on that day. He thought, however, that because the pain was in the same place as where he had been having it in the past, that it was a temporary flare-up and that it was not what he considered to be an "accident." He thought nothing of it at the time.

Romero was given a thermogram on April 4, 1984, a myelogram on April 30, 1984, and a chymopapaine injection on May 10, 1984. He has been on medication since March 16, 1984. Romero has also been

using a brace and a cane since returning to Dr. Harvie in March of 1984. He has undergone physical therapy since April of 1984.

The treatment that Romero received between March and June of 1984 relieved his symptoms somewhat, but not to the extent where he could return to work. Anticipated future medical treatment includes putting Romero in a body cast in order to determine if fusion would be of benefit to him. If the body cast succeeds in relieving the pain, the fusion may be helpful.

**April 26, 1984**

This was Romero's last day of work. He has received no disability benefits since this date.

**June 11, 1984**

Romero's workmen's compensation complaint was filed on this date.

The above facts and others will be discussed more fully in our opinion as the specific issues raised in this appeal are considered.

**DISCUSSION**

**I. WHETHER THE STATUTE OF LIMITATIONS IS TOLLED INDEFINITELY FOR A CLAIMANT, WHO, AFTER RECEIVING WORKMEN'S COMPENSATION, RETURNS TO WORK IN PAIN, SUBJECT TO MEDICALLY–IMPOSED RESTRICTIONS, AND NEEDS ASSISTANCE TO DO PART OF HIS JOB**

GE's statement of the issue proceeds on the assumption that Romero knew, or should have known, of his disability at a time which would have made his June 1984 claim untimely under the Workmen's Compensation Act, NMSA 1978 Sections 52–1–1 to –69. *See* § 52–1–31(A). Romero challenges the assumption and argues that this court must decide whether he knew of a disability which would have triggered the statute of limitations. This question requires that we review the evidence presented at trial to determine whether there was substantial evidence upon which the trial court could find that plaintiff neither knew nor was able to know that he was suffering from a disabling injury. *See Lent v. Employment Sec. Com'n of State of New Mexico,* 99 N.M. 407, 658 P.2d 1134 (Ct. App.1982).

During the trial of this matter, extensive testimony was presented, through deposition and in-court witnesses, which traced the work and medical history of the plaintiff.

GE asserts, on appeal, that where a workman has a correctly diagnosed disability of which he is informed, and which he understands, the statute of limitations begins running, as a matter of law, when previous compensation payments associated with the injury stop. GE argues that the facts of this case show that before Romero returned to work on February 1, 1982, his doctor had diagnosed a herniated disc and nerve root damage, and that the doctor had recommended surgery. GE also argues that by the time Romero returned to work, his doctor had advised him that his back condition was permanent, had advised him to attend a lower back school, and had imposed a restriction that he not lift weight in excess of ten pounds. GE claims that in light of the information provided by Romero's doctor, as well as in light of evidence showing that, as an employer, GE preferred employees without lifting restrictions, the weight lifting restrictions imposed on Romero constituted a disability.

Romero answers that there is substantial evidence to support the determination of the trial court that his present claims were not untimely filed. Romero discusses the evidence presented to argue, in effect, that GE has failed to distinguish between impairment and disability. Romero claims that although the evidence might indicate that he returned to work in a physically impaired condition, this physical impairment does not mandate a finding that Romero should have known that he was disabled as a result of his prior back injury.

Following his back injury of June 24, 1981, Romero was under the care of Dr. Harvie. Dr. Harvie first diagnosed a chronic lumbosacral spine sprain. Later tests showed signs of nerve root irritation.

Dr. Harvie then discussed the possibility of surgery with Romero, as well as an epidural injection. An injection was done in October 1981, which yielded good results. After seeing Romero in June of 1982, Dr. Harvie did not see him again until March 1984.

Romero testified that his back felt better after the injection in October 1981, and that he wanted to return to work at the time Dr. Harvie released him. When Romero did return to work, he returned to the same job he had before his accident, that of Hyster driver. Upon return to work, Romero worked full-time, and sometimes overtime. According to Romero, a twenty-five-pound lifting restriction was imposed by Dr. Harvie, but that Dr. Harvie advised him to use his own judgment as to how and what to lift. Dr. Harvie did not tell Romero not to bend or stoop. Romero said that the lifting restriction did not affect his job performance because he did not have to lift anything at work. Soon after he returned to work, Romero was assigned to drive a "scooter." Soon after returning to work, Romero missed some work due to an argument with a supervisor. Romero received workmen's compensation during that period of absence from work.

Kenneth Nunn, Romero's supervisor at GE, said that Romero drove a forklift prior to the back injury of 1981. According to Nunn, driving a forklift requires no unusual lifting, and that sometimes such duties require twenty to twenty-five pounds of effort. Nunn said that Romero returned to his same job of forklift operator after recovering from his injury. The work for Romero was no lighter upon his return, nor was he restricted from using a scooter when he returned to work. Nunn said that it was the policy of GE to discourage any heavy lifting of anything that could cause injury. Overhead cranes were available to help in heavy lifting. Romero performed normally upon his return to work. Nunn was opposed to Romero's initial ten-pound lifting restriction because Nunn thought such a restriction would interfere with Romero's duties, which required preparing a skid for lifting with the forklift. Romero's weight restriction was subsequently raised to twenty-five pounds in March of 1982. Nunn said that several employees at GE had weight lifting restrictions, and that Romero's weight lifting restriction did not affect him at all. Although driving a scooter was more physically strenuous than driving a forklift, Romero drove a scooter for a few months after his return to work, without complaint.

Other evidence from exhibits admitted at trial shows that Romero did all that was expected of him at work until sometime in March or April 1984, when Romero refused to lift something.

GE relies on *Cordova v. Union Baking Co.*, 80 N.M. 241, 453 P.2d 761 (Ct.App. 1969), for the proposition that the statute of limitations in a workmen's compensation action begins to run when a workman has a partial disability. *Cordova* states that a partial disability exists when there is an inability, to some percentage extent, to perform the workman's usual work at the time of his injury, and when there is an inability, to some percentage extent, to perform any work for which the workman is fitted. *Cordova* also discusses *Noland v. Young Drilling Co.*, 79 N.M. 444, 444 P.2d 771 (Ct.App.1968). *Noland* states that when it is "reasonably apparent" to the worker that he has sustained a compensable injury, the statute begins to run and will not be delayed pending the discovery of a more serious disability. *Cordova* upheld the determination of the trial court that the statute of limitations barred a workmen's compensation claim. The facts in *Cordova* showed that when the workman returned to work, he was unable to perform his work at the same level that he did before his injury.

The *Cordova* case, as well as *Noland*, are cited in support of the holding in *ABF Freight System v. Montano*, 99 N.M. 259, 657 P.2d 115 (1982). In *ABF Freight*, the New Mexico supreme court upheld the trial court's finding that plaintiff's claim was barred by Section 52–1–31. The trial court found that plaintiff's disability existed

when he returned to work after a work-related injury because he worked with pain; had to ask others to assist him in the duties of his employment; sought medical attention; and applied home remedies. The supreme court's ruling in *ABF Freight* turned on the appellate court's review of the trial court's finding under the substantial evidence rule. The court quoted, with approval, the "reasonably apparent" language in *Noland* and concluded that the trial court's finding that plaintiff should have known of his disability was supported by substantial evidence.

In *Smith v. Dowell Corp.*, 102 N.M. 102, 692 P.2d 27 (1984), the New Mexico supreme court reversed the district court's grant of summary judgment to defendant on the basis that the limitation period had run. While *Smith* concerned a latent injury, the court noted with approval the "reasonably apparent" rule. In determining that material issues of fact existed as to when plaintiff should have discovered his compensable injury, the court reviewed the evidence which showed that plaintiff suffered an accidental injury at work, continued working at his regular job with a short period of light duty, worked with pain and was told by the company's doctor that he would not have any permanent impairment from the accident.

*Smith* relies on *Duran v. New Jersey Zinc Co.*, 83 N.M. 38, 487 P.2d 1343 (1971), for the proposition that an uneducated laborer should not be expected to have greater knowledge than a medical expert. In *Duran*, the New Mexico supreme court upheld the trial court's finding that because all treating physicians released plaintiff to full employment duties, the injury did not and should not have become reasonably apparent to plaintiff while he still worked at his regular employment. The supreme court found that the trial court's finding was supported by substantial evidence and cautioned the court of appeals against reweighing the evidence in the case.

In deciding whether a finding of a trial court has substantial support, the reviewing court must view the evidence in the light most favorable to support the finding, and any evidence unfavorable to the finding will not be considered. *Duke City Lumber Co. v. New Mexico Environmental Board*, 101 N.M. 291, 681 P.2d 717 (1984). On appeal, we do not retry the case nor reweigh evidence. *Mountain States Construction Co. v. Aragon*, 98 N.M. 194, 647 P.2d 396 (1982). If there is evidence that a reasonable mind accepts as adequate to support a conclusion, findings of the trial shall not be disturbed. *Sandoval v. Dept. of Employment Security*, 96 N.M. 717, 634 P.2d 1269 (1981).

For the trial court to be upheld on appeal, there must be substantial evidence that at no time prior to May 11, 1982, could it be said that Romero knew or should have known that he was partially disabled, in light of his inability to perform work for which he was fitted. As discussed above, evidence was presented that Romero's back condition improved following injections in October 1981, such that Romero's physician released him to return to work on February 1, 1982. Although there is some indication that a low weight lifting restriction was not acceptable to Romero's supervisor when Romero first returned to work in February 1982, GE did not refuse to pay workmen's compensation in March 1982, when Romero missed work, in part, to see about getting an increased weight lifting restriction. *See ABF Freight; Pena v. N.M. Highway Dept.*, 100 N.M. 408, 671 P.2d 656 (Ct.App. 1983). At any rate, despite the reservations of Romero's supervisor about a low weight lifting restriction, the same supervisor testified that Romero's weight lifting restrictions never interfered with his job performance, and testified that Romero even worked overtime. Even if Romero's return to Dr. Harvie in June 1982 might have served to start the running of the statute of limitations, such visits to Dr. Harvie occurred within two years and thirty days of the filing of Romero's complaint on June 11, 1984. *See ABF Freight; Pena.* At any rate, we do not think the visits to Dr. Harvie served to start the running of the limitations period because

there is no indication that Romero was at any time unable to fully perform his work. *See Duran; Sedillo v. Levi-Strauss Corp.,* 98 N.M. 52, 644 P.2d 1041 (Ct.App.1982).

Thus, GE's suggestion that Dr. Harvie's diagnosis prior to February 1, 1982 served to start the limitations period upon Romero's return to work, ignores the rule that disability depends on the workman's ability to do work for which he is fitted. *See Duran; Sedillo.* Here, it is clear that there is substantial evidence that Romero fully performed his job duties after his return to work on February 1, 1982. Whatever Dr. Harvie's prior diagnosis, the injection of October 1981 enabled Romero to fully do his work after his return to work. Because the record substantially indicates that Romero was able to fully perform his job duties, it is clear that the trial court could have determined that Romero was not disabled. *See Gonzales v. Bates Lumber Co.,* 96 N.M. 422, 631 P.2d 328 (Ct.App.1981) (degree of disability is a question of fact).

■ We conclude that there is substantial evidence to support the ultimate findings of the trial court on the question of statute of limitations. The trial court will be affirmed in its determination that Section 52–1–31(A) did not operate to preclude Romero's present suit.

## II.  AGGRAVATION

In point II of the brief-in-chief, GE indicates that it will not address the issue of aggravation of a previous injury in accord with the statement in the calendaring notice that the "aggravation issue" was a false issue and we will not address it further here.

## III.  RATE OF COMPENSATION

As previously mentioned, the trial court found that Romero was neither disabled nor aware of any disability between February 1, 1982, and March 16, 1984. The trial court also found that Romero was entitled to weekly benefits in the amount of $289.20 beginning April 27, 1984. Prior to its amended finding to reflect the amount of $289.20, finding no. 31 of the trial court indicated that Romero was entitled to benefits representing two-thirds of Romero's average weekly wage as of March 16, 1984.

On appeal, GE claims that, in the event Romero is determined to be entitled to any benefits at all, his average weekly wage must be calculated with reference to the wages he was earning in June 1981, at the time he initially injured his back. GE argues that there was no new injury, and asserts that the rate of compensation does not escalate each time the workman returns to work.

Romero answers that the proper rate is the rate in effect when the workman becomes disabled. He claims that there is substantial evidence in support of the findings of the trial court concerning the compensable rate. Romero also claims that there is substantial evidence in support of the finding of the trial court that Romero's back condition was aggravated after his return to work. Romero asserts that notice of the aggravating condition was not necessary.

The findings of the trial court that Romero earned $8.48 per hour in June 1981, as compared to $10.36 per hour in March 1984, are not challenged. The findings are supported by the record. The only claim asserted is that the rate of compensation should be based on Romero's salary at the time of his injury in June 1981, rather than when he quit work in April 1984.

■ Decided cases addressing the general issue presented here are difficult to apply to this case because of factual differences and because of some ambiguity in requirements stated in the decided cases. The general rule applicable here is that the date of disability, for purposes of determining what compensation rate applies, is the date when the workman knows or should have known that he has suffered a compensable injury. *Murrieta v. Anaconda Co.,* 98 N.M. 720, 652 P.2d 742 (Ct.App.1982); *see Gonzales v. Bates Lumber Co.,* 96 N.M. 422, 631 P.2d 328 (Ct.App.1981); *Casias v. Zia Co.,* 93 N.M. 78, 596 P.2d 521

(Ct.App.1979). Our opinion is that under the facts of this case, the compensable rate should be determined as of the date that Romero could not return to work in April 1984. The reason the later date applies in this case is because disability depends on whether the workman can perform work for which he is fitted and, as previously discussed in point I, a workman does not know, nor should he know, of a disability until such time as he cannot, to some percentage extent, perform work for which he is fitted. *See Cordova v. Union Baking Co.,* 80 N.M. 241, 453 P.2d 761 (Ct.App. 1969). Thus, any time a workman receives workmen's compensation and then returns to work, the question of whether he knew or should have known of his disability depends on whether, upon return to work, he is able to work at full capacity. If, upon return to work, the workman performs at reduced capacity, then he should know of his disability. *See ABF Freight.* Such a rule, for purposes of calculating a compensable rate, is consistent with the notion expressed in *Casias, Gonzales* and *Murrieta* that the compensable rate should be calculated as of the date that the workman knew, or should have known, of his disability.

█ In the present case, as discussed in point I, there is substantial evidence to show that Romero always worked at full capacity after his return to work on February 1, 1981. It is proper to conclude, therefore, that Romero did not, or should not, have known of his disability until he was unable to work in April 1984. Because the compensable rate is calculated as of the date the workman knew or should have known of his disability, that rate should be calculated in this case as of April 1984 when Romero's injury prevented him from working. Because the trial court did calculate the compensable rate as of April 1984, the trial court should be affirmed.

Therefore, the judgment of the trial court will be affirmed both with regard to the statute of limitations and the rate of compensation applied.

IT IS SO ORDERED.

GARCIA, J., concurs.

DONNELLY, J., concurring in result.

DONNELLY, Judge (concurring in result).

Although I concur with the result reached by the majority, I do not concur in the analysis or that the question of aggravation was a false issue. The trial court found that claimant was initially injured on June 16, 1981, in a work-related accident, and was temporarily totally disabled from the date of his injury to February 1, 1982. Thereafter, claimant returned to work and continued working from February 1, 1982 until March 16, 1984, when he again became disabled. The trial court specifically found that claimant's initial back injury suffered in 1981, "was aggravated by his continued work" with his employer. (Finding No. 19.)

The trial court's award of compensation was predicated in part upon a finding that claimant's initial injury was aggravated by his continued work and that the aggravation of the injury produced claimant's disability. *See Herndon v. Albuquerque Public Schools,* 92 N.M. 635, 593 P.2d 470 (Ct.App.1978); *see also Pena v. N.M. Highway Department,* 100 N.M. 408, 671 P.2d 656 (Ct.App.1983); *Casias v. Zia Co.,* 93 N.M. 78, 596 P.2d 521 (Ct.App.1979). Compensation is not payable until and unless a work-related accident produces an injury which becomes disabling. *Casias.* Claimant's cause of action was timely filed within one year from the date of aggravation of his initial injury and the award of compensation was properly based upon his earnings at the time of the aggravation of the injury.