644 P.2d 1041

**Lugie SEDILLO, Plaintiff-Appellee,**

v.

**LEVI–STRAUSS CORPORATION,
Defendant-Appellant.**

**Lugie SEDILLO, Plaintiff-Appellant,**

v.

**LEVI–STRAUSS CORPORATION,
Defendant-Appellee.**

**Nos. 5438, 5441.**

Court of Appeals of New Mexico.

April 8, 1982.

Certiorari Denied May 11, 1982.

Roger V. Eaton, Branch, Perkal & Associates, P. A., Albuquerque, for Lugie Sedillo.

Carlos G. Martinez, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for Levi Strauss Corp.

## OPINION

WALTERS, Chief Judge.

Both parties appealed from portions of the judgment entered below; the appeals have been consolidated for decision.

Plaintiff Sedillo challenges the rate of disability compensation awarded her, and denial of payment to her doctor for medical services rendered. Defendant appeals the court's allowance of expert witness fees to plaintiff. We reverse.

The parties stipulated at the beginning of trial that plaintiff suffered a work-related injury on March 14, 1979. At the conclusion of the trial, the court allowed plain-tiff's amendment of the pleadings to allege that plaintiff's disability commenced on June 6, 1980, when she was unable to get out of bed. Defendant's Exhibit B shows that on that date the defendant company placed her on leave of absence; she never returned to work. We discuss, in order, the date of disability upon which the rate of compensation is to be based; medical benefits payable on plaintiff's behalf, and defendant's liability for payment of plaintiff's expert witness fees.

## I.

Defendants rely on testimony of one doctor that, in his opinion, if plaintiff worked in pain from March 14, 1979 she was five or ten percent disabled from the date of the accidental injury; and from another doctor that, assuming plaintiff complained of pain from the date of the accident and consequently was shifted to other jobs for her accommodation, he would assume that her disability began at the date of injury and gradually increased until she was forced to stop work. This evidence, they claim, supports the trial court's award of 10% disability commencing March 14, 1979, and total disability after June 6, 1980.

We cannot say that either doctor was mistaken if we accept their opinions as being related to claimant's medical disability following the 1979 injury. But eligibility under the Workmen's Compensation Act is concerned with *legal* disability as statutorily defined, and the court is not bound by medical opinion or medical definitions when determining whether a compensable disability exists. *Cardenas v. United Nuclear Homestake Part.*, 97 N.M. 46, 636 P.2d 317 (Ct.App.1981); *Goolsby v. Pucci Distrib. Co.*, 80 N.M. 59, 451 P.2d 308 (1969). Medical testimony is necessary to establish the causal connection between an accidental injury and a resulting compensable disability, § 52-1-28 B, N.M.S.A. 1978; it does not resolve the questions of date of commencement or degree of compensable disability. *Goolsby, supra.*

We said, in *Cardenas, supra*, at 636 P.2d 320:

The concept of "compensable disability" intrinsic to our workmen's compensation law is that in order to be entitled to an award of compensation benefits a workman must not only suffer a physical impairment, but also be unable to perform work.

The pertinent portions of the Act regarding disability are §§ 52–1–24 and –25, N.M. S.A.1978. They read, respectively:

"[T]otal disability" means a condition whereby a workman, by reason of an injury arising out of and in the course of, [sic] his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of this injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience[,]

and

"[P]artial disability" means a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage-extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience.

Chief Justice Easley said in *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980), that "[i]mpairment of physical function is not enough to justify an award * * *; there must be some disability, or inability, to perform work."

In this case, no one disputes or doubts that plaintiff suffered almost constant back pain following the March 14, 1979 injury. But the evidence concerning her ability, albeit with pain, to perform the work functions she was doing at the time of the accident was that she continued at "hook rope," "trim pockets" (—two operations for which she was awarded certificates of 100% production before she was injured—) and "turn and stack" assignments after the accident. Other than for the payroll period following March 14, 1979, during which plaintiff was sent to the company's doctors for examination and was off work, there is not an iota of evidence in the record to indicate that plaintiff did less work or put in fewer weekly hours after the accident than before. Indeed, her average weekly pay scale, based upon production, rose from $3.059 per hour for the March 1979 quarter to $4.199 per hour for the June 1980 quarter when she became unable to work. During that entire time she was able to and did perform the work she was doing at the time of the injury as well as work for which she was fitted by her training and experience.

Plaintiff was not paid any workmen's compensation benefits at any time. She was not advised by the company doctors, nor was her employer, that she had suffered a compensable injury in March 1979. An uneducated worker is not charged with medical knowledge "which apparently transcends that possessed by the attending physician." *Duran v. New Jersey Zinc. Co.*, 83 N.M. 38, 39, 487 P.2d 1343 (1971). She filed her claim for compensation well with the time limitation after she knew or had reason to know she had suffered a compensable injury when so advised by her own doctor. See *Gomez v. Hausman Corp.*, 83 N.M. 400, 492 P.2d 1263 (Ct.App. 1972).

Plaintiff was not disabled, under the clear language of §§ 52–1–24 and –25, *supra*, until June 1980.

## II.

Plaintiff contends it was error to deny her claim for payment of medical services rendered by her personal physician. According to the evidence, Lugie Sedillo was excused from work and sent to the Center for Industrial Medicine when she reported the accident on Wednesday, March 14, 1979. X-Ray Associates made x-rays of her back and reported to the Center that Mrs. Sedillo had degenerative disc disease in the lumbosacral area. One of the Center's doctors recommended moderate duty, no lifting of more than forty pounds, no excessive bending, and no excessive vibrative tool work.

Neither the x-ray findings nor the doctor's recommendations were communicated to the employer or to the plaintiff-employee. In a letter dated two days after the accident, however, the Center wrote the employer that plaintiff had been given a muscle relaxant and was advised to obtain bedrest, and that she should return to work the following Monday.

In September 1979, plaintiff was sent back to the Center for reexamination following complaints of continued back pain. The Center's report of that visit was made *in April 1980* to the employer's insurance carrier, advising that it had not been paid for that examination and reporting that plaintiff had a "normal spine." That information, reduced to a writing two months before plaintiff quit work, was again never conveyed to the employer until after plaintiff had left her employment, when the employer had a conference with the Center for Industrial Medicine regarding its failure to provide medical reports on defendant's employees. Plaintiff never knew of this report before she filed suit for benefits.

When Mrs. Sedillo found she could not get out of bed on June 6, 1980, she made an appointment to see her personal physician. On June 16, 1980, that doctor completed the disability form provided to plaintiff by her employer, indicating that plaintiff's "nature of disability" was "low back injury—severe * * * [intervening words unreadable] on March 1979." Employer's nurse told plaintiff "if she felt it had something to do with work, that she should see our company doctor." When plaintiff replied that she wanted to see her own physician, nothing more was said or done by the nurse or anyone else in defendant's employ regarding medical treatment.

We have outlined the entire substance of the evidence relating to the employer's obligation to furnish medical attention as provided under § 52–1–49, N.M.S.A.1978. *See Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

■ Defendants argue that the nurse's comment quoted above was a June 1980 "offer of services of the company doctor."

They cite *Cardenas v. United Nuclear, supra*, and *Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 635 P.2d 1323 (Ct.App.1981), as establishing the employer's "right to select which medical practitioners and hospitals will treat the injured workman." These and other cases do recognize the clear language of the statute in that regard. *Montoya* and *Garcia, supra*, pointed out specific exceptions, however, where (1) the employer, although passively expressing a willingness to furnish medical treatment, fails to do so in fact; and (2) although not actually refusing medical services, the employer fails to make arrangements for them or for necessary emergency treatment.

■ The trial court's Finding 6 and Conclusion 7, while denying payment to plaintiff for her doctor's bill because defendant "offered adequate medical attention which was refused by plaintiff," both acknowledge that plaintiff's private doctor rendered "reasonable and necessary medical attention [to plaintiff] through June of 1981." Defendants' medical expert, who examined plaintiff immediately prior to trial, agreed with plaintiff's private doctor that the March 1979 accident caused the disability manifested in June 1980; that plaintiff's spinal condition seen by him in April 1981 was "essentially the same" as shown by the March 1979 x-rays; that the 1979 x-ray diagnosis of degenerative disc disease was accurate; and both doctors agreed that only a spinal fusion would bring possible relief to plaintiff.

Despite this evidence of a physical condition directly related by all medical examiners to the 1979 accident, the employer at no time provided any medical *treatment* for plaintiff and denied throughout this proceeding that plaintiff was disabled or entitled to compensation benefits under the Act. The 1979 *examinations* furnished by the employer hardly amounted to a showing that the employer had "made provisions for * * * adequate * * * medical facilities and attention" as required by § 52–1–49, *supra*. When company doctors ignore diagnostic information and fail to advise either the patient or the patient's employer of a condi-

tion requiring attention, we would be irresponsible were we to hold that this is substantial evidence that the employee was afforded adequate medical services. *See Atlantic & Gulf Stevedores, Inc. v. Neuman,* 440 F.2d 908 (5th Cir. 1971), regarding the employer's liability for medical services obtained by the workman when the employer's doctors erroneously diagnosed the workman's condition and reported his fitness for work; and *Benson v. Coca Cola,* 120 N.J.Super. 60, 293 A.2d 395 (1972), concerning the propriety of applying "hindsight" in evaluating the necessity and reasonableness of the employee's action in seeking medical attention from her own doctor.

Just as in *Garcia, supra,* and *Trujillo v. Beaty Elec. Co., Inc.,* 91 N.M. 533, 577 P.2d 431 (Ct.App.1978), the nurse's comment to plaintiff in June of 1980 was "no more than a passive willingness" to provide medical aid; it does not rise to the fulfillment of an employer's statutory duty to provide adequate medical care to a work-injured employee. There is an inherent anomaly in defendant's position on appeal that they met that statutory obligation while, at the same time, they were denying and continued to deny throughout trial that plaintiff had suffered any work-related accidental injury or compensable disability.

Having failed to offer or provide medical services, the limitation of § 52-1-49 B is not applicable to this plaintiff. Defendants are liable for the medical services which plaintiff obtained for herself from her own doctor until notified on January 15, 1981 by defendants' counsel that "any further medical treatment" not authorized by the company would have to be at her own expense.

### III.

■ Although plaintiff called four expert witnesses, none of them were subpoenaed to appear. The trial court allowed assessment of the cost of expert witness fees against defendants in the total amount of $750. Defendants contend that § 52-1-35, N.M.S.A.1978, providing that "[n]o costs shall be charged, taxed or collected by the clerk

except for witnesses who testify under subpoena" prohibits assessment of witness fees against them. Plaintiffs, on the other hand, point to § 38-6-4 B, N.M.S.A.1978, authorizing a $750 expert witness fee in the discretion of the district court if a witness qualifies as an expert and testifies in person or by deposition. This section imposes no requirement that the expert witness appear under subpoena. She also relies on N.M.R. Civ.P. 54(d), N.M.S.A.1978, which allows costs "as of course to the prevailing party." Rule 54(d) contains language preceding that upon which plaintiff depends, however, permitting assessment of costs against the losing party "[e]xcept when express provision therefor is made either in a statute or in these rules [of civil procedure]."

Section 52-1-34, N.M.S.A.1978, provides that the Rules of Civil Procedure shall apply to compensation claims "except where provisions of the Workmen's Compensation Act directly conflict * * * in which case the provisions of the Workmen's Compensation Act shall govern."

Section 52-1-35, *supra,* directly conflicts with Rule 54(d) in that it requires witnesses in a workman's compensation case to be subpoenaed before those costs may be taxed, and Rule 54(d) does not. Subsection B of § 52-1-35 refers to the *amount* to be allowed to "[t]hese [subpoenaed] witnesses" as "the same fee * * * as is fixed by law in other civil actions; provided, however, the court may assess * * * the fees allowed any medical witness whose * * * trial attendance is ordered by the court, as provided in Section 59-10-20.1, New Mexico Statutes Annotated, 1953 Compilation." There was no § 59-10-20.1 at the time this statute was written, nor does it appear there ever was such a section enacted. Even so, two of plaintiff's experts were not medical witnesses and the attendance of none of them was ordered by the court. But if we ignore the reference in § 52-1-35 B to a non-existent procedural statute, the purported allowance of a fee for medical witnesses different from or more than the amount allowed other witnesses would still seem to require that the medical witness be under

order of the court to appear in order to permit taxation of costs in an amount different from that allowed for subpoenaed non-expert witnesses. A subpoena is nothing more nor less than an order of the court to appear and testify.

The Workmen's Compensation Act containing an express prerequisite for the payment of witness fees directly in conflict with Rule 54(d), and imposing a requirement not found in the statutes which relates to the *amount* which may be allowed for medical witnesses, § 38–6–4 B, *supra*, we hold it was error for the trial court to tax expert witness fees against defendants.

The judgment below is reversed. Plaintiff shall be awarded total disability benefits at the rate in effect on June 6, 1980, and costs for services rendered by her personal physician until January 15, 1981. She shall be liable for her own expert witness fees.

Plaintiff is awarded a fee of $2,000 for services of her attorneys on appeal.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.