763 P.2d 690

Jon Carlos SALAZAR,
Claimant–Appellee,

v.

The ALBUQUERQUE TRIBUNE and
CNA Insurance Companies,
Respondents–Appellants.

No. 10283.

Court of Appeals of New Mexico.

Oct. 6, 1988.

Narciso Garcia, Jr., Toulouse, Toulouse & Garcia, P.A., Albuquerque, for claimant-appellee.

Ben M. Allen, Alan Mark Varela, Hatch, Beitler, Allen & Shepherd, P.A., Albuquerque, for respondents-appellants.

OPINION

APODACA, Judge.

Respondent CNA Insurance Companies (insurer) appeals from an order awarding claimant Jon Carlos Salazar (claimant) scheduled injury benefits for the loss of his left leg below the knee, medical expenses and attorney fees. Insurer is The Albu-

querque Tribune's (employer) workers' compensation carrier; employer publishes a daily newspaper. On August 25, 1984, claimant fell at his place of employment, injuring his left foot. When he fell, claimant had an infection already established in his foot. The hearing officer found, and this finding was not challenged, that the fall aggravated the preexisting infection and led, as a natural and direct result, to the amputation of claimant's leg below the knee on April 15, 1985. On appeal, insurer argues claimant's claim was barred by the statute of limitations. The precise issue before us, then, is when, on the facts of this case, the statute of limitations began to run. We disagree with insurer's contention that the claim was barred and therefore affirm the hearing officer's award of benefits.

When injured, claimant was employed as employer's sports editor. After the fall, doctors diagnosed the foot infection at the hospital. The infection was treated by surgical drainage, and only the fourth toe on claimant's left foot was amputated at that time. Insurer paid for this treatment and related expenses. Despite the treatment, the infection progressed. On December 17, 1984 and March 21, 1985, claimant was briefly hospitalized for further treatments. Insurer paid for the December 1984 treatment; however, on March 28, 1985, insurer's adjuster informed claimant that insurer would not pay for the March 1985 hospitalization. On April 10, 1985, claimant was informed that efforts to save his foot had been unsuccessful. His leg was amputated five days later. Insurer refused to pay for the amputation. Claimant filed his claim for benefits with the Workers' Compensation Administration on April 10, 1987.

In the administrative proceedings, insurer denied causation and raised the statute of limitations as a defense. Insurer's proposed findings of fact asked the hearing officer to find that "[f]rom August 25, 1984 through April 10, 1985, Claimant worked with pain, reduced his activities, requested others to assist him in his duties, and sought and received medical attention to relieve his pain and disability" and that "[f]rom August 25, 1984 through April 10, 1985, it became reasonably apparent or should have become reasonably apparent to Claimant that he had an injury and partial disability on account of which he was entitled to compensation." Additionally, insurer requested a finding that the claim was filed

> more than two years after it became reasonably apparent, or should have become reasonably apparent to Claimant that he had an injury and partial disability on account of which he was entitled to compensation, and more than two years after the employer and the Worker's Compensation carrier expressly refused and failed to make a payment of compensation.

Insurer concedes that the hearing officer found against it on the matters addressed in the requested findings. Thus, part of insurer's argument on appeal has been that there is no substantial evidence to support the determination that claimant was not partially disabled prior to April 10, 1985.

■ Preliminarily, we note the statute of limitations does not apply to medical expenses; such expenses may be claimed even though the right to claim installment compensation payments may be barred. *Nasci v. Frank Paxton Lumber Co.*, 69 N.M. 412, 367 P.2d 913 (1961). Thus, insurer is responsible for paying the medical expenses, irrespective of our disposition of this appeal.

When a worker is disabled by a work-related injury, he has a maximum of two years and thirty-one days from the occurrence of his disability to file his claim. *See ABF Freight Sys. v. Montano*, 99 N.M. 259, 657 P.2d 115 (1982); *Cole v. J.A. Drake Well Serv.*, 106 N.M. 484, 745 P.2d 392 (Ct.App.1987). Insurer argues the statute of limitations begins to run from the date on which it becomes reasonably apparent, or should become reasonably apparent, to a worker that he has an injury on account of which he is entitled to compensation, and the employer fails or refuses to make a payment. *See Noland v. Young Drilling Co.*, 79 N.M. 444, 444 P.2d 771 (Ct.App.1968). Claimant, on the other

hand, does not dispute the applicability of these cases, but only insurer's method of applying the law enunciated by them to the facts of this case.

■ Insurer first contends the statute of limitations began to run on August 25, 1984, the date of the fall and toe amputation. It characterizes this amputation as a scheduled injury for which claimant was entitled to, but was not paid, compensation and thus asserts the limitations period began to run at that time. Yet, in the administrative proceedings, insurer requested a finding that the preexisting infection, not the injury, caused the amputation of the toe. We believe insurer cannot so radically change its theory of the case on appeal. *See American Bank of Commerce v. United States Fidelity & Guar. Co.*, 85 N.M. 478, 513 P.2d 1260 (1973). Besides, the hearing officer made no finding on the cause of the toe amputation, and, after reviewing the evidence on the record as a whole, we cannot say as a matter of law that this amputation was compensable as a scheduled injury. We necessarily conclude that insurer's contention on this point is without merit.

■ Insurer next argues claimant's cause of action accrued on the date of the fall because he was partially disabled from that date until his recovery from the leg amputation. Insurer asserts that *ABF Freight* held it is reasonably apparent to a worker that he has sustained a compensable injury when he returns to work, works with pain, has to ask others to assist him in his duties, seeks medical attention and applies home remedies. We believe insurer is misapplying the case. In *ABF Freight,* the trial court found the claimant disabled as evidenced by the particular facts noted above, and the supreme court merely upheld those findings as supported by substantial evidence.

In this case, however, the hearing officer rejected insurer's requested findings on the issue before us. A trial court's determination of factual findings frequently involves selecting inferences drawn from adduced evidence. The possibility that on similar facts, such as the facts relied upon by insurer in *ABF Freight,* another trier of fact may have drawn different inferences and made different findings does not compel reversal. *See State v. Anderson*, 107 N.M. 165, 754 P.2d 542 (Ct.App.1988). The question on appeal is whether the findings are supported by substantial evidence, not whether the trial court could have reached a different conclusion. *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 715 P.2d 462 (Ct.App.1986).

Of considerable significance to our disposition is that insurer's argument misconstrues the *Noland* test for determining when the limitations period begins to run. That case stated the limitations period begins to run "[a]s soon as it becomes reasonably apparent, or should become reasonably apparent to a workman that he has an injury on account of which he is entitled to compensation *and* the employer fails or refuses to make payment." 79 N.M. at 447, 444 P.2d at 774 (emphasis added). This is a two-part test: The first inquiry is to determine when it was, or should have been, reasonably apparent to the worker that he suffered an injury for which he was entitled to compensation; the second inquiry is to determine when the employer failed or refused to pay compensation. In some instances, the dates on which the first and second parts of the test are met will be close together in point of time. However, as *Noland* also emphasizes, where the worker is aware he suffered an injury for which he is entitled to compensation, but the *disability* does not occur until some time later, the limitations period begins to run after the occurrence of the disability, not on the date of the worker's awareness.

With respect to the second part of the test, the first compensation installment is not due until "thirty-one days after the date of the occurrence of the disability." NMSA 1978, § 52–1–30(A). "Disability" is statutorily defined. NMSA 1978, §§ 52–1–24 and –25.

■ We conclude there can be no failure to pay compensation until at least thirty-one days after a claimant is disabled within the meaning of the statutes. This court, beginning with *Noland,* has consistently

recognized and applied this principle in determining when the limitations period begins to run. *See Romero v. General Elec. Corp.*, 104 N.M. 652, 725 P.2d 1220 (Ct. App.1986); *Gomez v. Hausman Corp.*, 83 N.M. 400, 492 P.2d 1263 (Ct.App.1971); *Duran v. New Jersey Zinc Co.*, 82 N.M. 742, 487 P.2d 170 (Ct.App.), *reversed on other grounds*, 83 N.M. 38, 487 P.2d 1343 (1971); *Bowers v. Wayne Lovelady Dodge, Inc.*, 80 N.M. 475, 457 P.2d 994 (Ct.App.1969); *Cordova v. Union Baking Co.*, 80 N.M. 241, 453 P.2d 761 (Ct.App.1969).

Insurer apparently contends *ABF Freight* holds the limitations period begins to run on the date the first part of the *Noland* test is satisfied, that is, when it becomes, or should become, reasonably apparent to a worker that he has an injury for which he is entitled to compensation. To the extent that *ABF Freight* can be so interpreted, we believe it is factually distinguishable. As we have already noted, the trial court in *ABF Freight* found claimant was disabled. It appears that the disability there began on the date of the injury. Thus, in *ABF Freight*, the obligation to pay arose thirty-one days after the date of injury and disability, and the limitations period had expired two years and thirty-one days after this date. That case, however, does not address a situation where the disability did not arise until some time after the injury, or even a situation where no disability occurred.

In *Smith v. Dowell Corp.*, 102 N.M. 102, 692 P.2d 27 (1984), our supreme court was presented with a factual situation in which the accident resulted in a latent injury, and the claimant could not have been aware of his disability until several months later. That case noted the employer was obligated to pay compensation on the occurrence of the disability. In applying the first part of the *Noland* test, *Smith* held claimant could not have been aware of the disabling character of the injury until he was advised of it by his doctors, at which point the statute of limitations began to run. Although this appeal does not involve a latent injury as in *Smith*, we believe that case is more closely analogous to the facts of this case than *ABF Freight* and supports our application of *Noland* to those facts.

Insurer continually focuses on the first part of the test. The undisputed testimony before the hearing officer was that both claimant and insurer's claims adjuster recognized soon after the accident that claimant had suffered an injury, but both of them believed the only benefits to which claimant was entitled were medical benefits. These benefits were provided to claimant immediately and for some months later. Even if we assume, as insurer argues, that the first part of the *Noland* test was met on the date of the injury, it still remains for us to determine when the second part of the test was met, that is, when insurer failed or refused to pay compensation. As we noted previously, this could not have occurred until claimant became disabled within the statutory meaning. *See Noland v. Young Drilling Co.*

██ In the administrative proceedings, insurer did not request a finding that claimant had been partially disabled for any specific period of time, except the finding already noted, that from August 24, 1984 through April 10, 1985, it became, or should have become, reasonably apparent to claimant that he had an injury and partial disability for which he was entitled to compensation. We deem this requested finding as sufficient to preserve the issue of whether, and when, claimant became partially disabled. We also interpret the hearing officer's denial of the requested finding, as well as his award of scheduled injury benefits, as an implicit finding that claimant was not partially disabled. We further hold this implied finding is supported by substantial evidence.

In order to be partially disabled within the meaning of the statute, the worker must be,

> by reason of injury arising out of and in the course of his employment * *. * unable to some percentage-extent to perform the usual tasks in the work he was performing at the time of his injury *and* * * * unable to some percentage-extent to perform any work for which he is fitted by age, education, training,

general physical and mental capacity and previous work experience.

§ 52–1–25 (emphasis added). The test is clearly a two-part test, turning on a claimant's capacity to perform the tasks of his *usual employment* at the time he is injured, and his capacity to perform the tasks of any *other* work under the statutory terms. *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975).

Insurer's argument is to the effect that during the period of time from the fall to the leg amputation, claimant was unable to perform his usual employment tasks and needed assistance from others. We believe the evidence on this issue was in conflict and would have supported a finding either way. *See State v. Anderson.* On this record, we cannot say the hearing officer erred in refusing to find claimant disabled at any time before the leg amputation.

Thus, claimant's only valid claim was one for scheduled injury benefits due to the loss of his leg, and insurer did not fail to pay compensation on this claim until thirty-one days after the amputation on April 15, 1985, at which time the two-year limitations period began to run. Since claimant filed his claim on April 15, 1987, it was not barred.

The compensation order is affirmed. Claimant is awarded $1,500.00 as attorney fees on appeal.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.