1997-NMSC-053

947 P.2d 154

**Susie TORRES, Worker–Petitioner,**

v.

**PLASTECH CORPORATION and Wausau Insurance Company, Employer–Insurer–Respondents.**

**No. 23734.**

Supreme Court of New Mexico.

Oct. 1, 1997.

Will Ferguson & Associates, Donald M. Pinnock, Albuquerque, for Worker–Petitioner,

Butt, Thornton & Baehr, P.C., Jane A. Laflin, Albuquerque, for Employer–Insurer–Respondents.

## OPINION

MINZNER, Justice.

(1) Susie Torres appeals from the Court of Appeals' affirmance of an order by the Workers' Compensation Judge (WCJ) dismissing her claim for worker compensation benefits, based on the statute of limitations. The Court of Appeals concluded that substantial evidence existed to support the WCJ's determination that Torres knew or should have known of a compensable injury in 1991. As a result, because Torres did not file her claim for compensation until 1995, the Court of Appeals affirmed the conclusion that Torres's claim was barred by the statute of limitations. Torres contends that the running of the statute of limitations does not commence until a worker is entitled to benefits. Torres asserts that she was not entitled to benefits until 1994 and that the statute of limitations did not begin to run until that time. Because the WCJ did not determine a date of initial disability or scheduled injury, we conclude that there was not substantial evidence to support the ruling on the statute of limitations. Therefore, we reverse the order dismissing the claim, and we remand for further proceedings on the merits of the claim.

### I.

(2) Susie Torres became a full-time employee of Plastech Corporation in August 1989. Her duties included the inspection of lightweight objects produced by Plastech, such as VCR buttons, television cabinets, frames, and jack panels. This inspection process required rapid hand manipulation.

(3) In July 1991, Torres began experiencing pain and swelling in both wrists. As a result of this condition, Torres dropped objects, experienced numbness, and had difficulty sleeping due to the pain. She consulted a physician about this problem in November 1991, and discovered her condition could be carpal tunnel syndrome. She also learned that the problem could be work-related. She reported this information to her supervisor shortly after her consultation with the physician, but she did not demand compensation at that time.

(4) Torres's condition progressively worsened, and in February 1993, a specialist advised her that she would need surgery to correct the problem. Nonetheless, Torres continued performing her regular duties at work without assistance until October 28, 1994, at which time she could no longer perform any of her regular duties. Between 1991 and October 1994, Torres neither demanded nor received disability benefits, either temporary or permanent, for carpal tunnel syndrome.

### II.

(5) Torres filed a claim for disability benefits under the Workers' Compensation Act on March 28, 1995. The WCJ found that Torres "knew or should have known she had a compensable claim in November of 1991" and, therefore, the claim was barred by the statute of limitations. The Court of Appeals affirmed the WCJ's order in a memorandum opinion. *Torres v. Plastech Corp.*, NMCA 17,246, slip. op., ¶ 1 (June 4, 1996). The Court of Appeals determined that the evidence supported an inference that Torres's pain was a symptom of an impairment. *Id.* ¶ 2. Because Torres knew of this pain in 1991, there was substantial evidence to support the WCJ's conclusion on the statute of limitations. *Id.* (citing *ABF Freight Sys. v. Montano*, 99 N.M. 259, 260, 657 P.2d 115, 116 (1982)). In addition, the Court of Appeals relied on *ABF Freight System* in rejecting Torres's contention that there must be a demand on the employer by the worker in order to trigger the statute of limitations. *Id.* ¶ 4.

(6) We agree with the Court of Appeals that a demand for payment is not a prerequisite for triggering the statute of limitations and that an employer's failure to pay compensation owed is a proper alternative to a demand for payment. *See ABF Freight Sys.*, 99 N.M. at 260, 657 P.2d at 116. However, because the WCJ specifically refrained from deciding issues of disability, there was no determination of the date on which Torres was entitled to compensation. Because we conclude that the status of disability or the existence of a scheduled injury is a necessary element required to trigger the statute of

limitations, we must reverse the order of the WCJ as well as the affirmance by the Court of Appeals.

### III.

(7) This case requires us to revisit the statute of limitations contained in the Workers' Compensation Act. That statute of limitations provides:

> If an employer or his insurer fails or refuses to pay a worker any installment of compensation to which the worker is entitled under the Workers' Compensation Act ... after notice has been given as required by Section 52–1–29 NMSA 1978, it is the duty of the worker insisting on the payment of compensation to file a claim therefor as provided in the Workers' Compensation Act not later than one year after the failure or refusal of the employer or insurer to pay compensation. This one-year period of limitations shall be tolled during the time a worker remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one year. If the worker fails to give notice in the manner and within the time required by Section 52–1–29 NMSA 1978 or if the worker fails to file a claim for compensation within the time required by this section, his claim for compensation, all his right to the recovery of compensation and the bringing of any proceeding for the recovery of compensation are forever barred.

NMSA 1978, § 52–1–31(A) (1987). An employer shall begin to pay compensation "not later than thirty-one days after the date of the occurrence of the disability" and is not deemed to have failed or refused to pay compensation until the expiration of this time period. NMSA 1978, § 52–1–30 (1987, prior to 1993 amendment). Thus, the deadline by which a worker must file a claim ranges between one year and thirty-one days and two years and thirty-one days from the date of the occurrence of the disability, depending on the amount of time of continued employ-

ment with the defending employer. Sections 52–1–30, –31.[1]

(8) We must determine whether substantial evidence supports the WCJ's finding that the statute of limitations bars Torres's claim. *ABF Freight Sys.*, 99 N.M. at 261, 657 P.2d at 117. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pucci Distrib. Co. v. Nellos*, 110 N.M. 374, 376, 796 P.2d 595, 597 (1990). To determine whether substantial evidence exists for a trial court's finding, we indulge all reasonable inferences in favor of the finding. *Nellos*, 110 N.M. at 376, 796 P.2d at 597.

(9) In *ABF Freight System*, we concluded that a demand for payment by the worker is not necessary to commence the period of limitations. 99 N.M. at 260, 657 P.2d at 116. This holding is consistent with the Legislature's disjunctive reference to an employer's "failure or refusal" to pay compensation. Section 52–1–31(A). An employer's "failure" to pay is a passive act which does not require any inducement other than a worker's entitlement to compensation. Thus, we agree with the Court of Appeals that the statute of limitations begins to run despite a lack of demand for payment by the worker.

(10) We also note that the Court of Appeals correctly determined that the Legislature has required both notice to an employer of an accident *and* the timely filing of a claim. In fact, the statute of limitations specifically refers to an employer's "refusal" to pay compensation and expressly bars actions in which the proper notice was not supplied. Section 52–1–31(A). Therefore, we conclude the Legislature clearly contemplated barring claims either for a failure to notify the employer of a disability or a failure to file in a timely manner, and both requirements must be met in order to successfully assert a claim under the Act.

(11) Nevertheless, under the facts of this case, the statute of limitations does not bar Torres's disability claim. "[T]he statutory period begins to run '[a]s soon as it

---

1. This limitation provision applies only to disability benefits; there is no statute of limitations for medical benefits under the Act. *Whittenberg v.*

*Graves Oil & Butane Co.*, 113 N.M. 450, 455, 827 P.2d 838, 843 (Ct.App.1991).

becomes reasonably apparent, or should become reasonably apparent to a workman that he has an injury on account of which he is entitled to compensation.... ' " *ABF Freight Sys.*, 99 N.M. at 260, 657 P.2d at 116 (quoting *Noland v. Young Drilling Co.*, 79 N.M. 444, 447, 444 P.2d 771, 774 (Ct.App. 1968)). This requirement has two separate elements: (1) an injury entitling the worker to compensation under the Act; and (2) knowledge, or imputed knowledge, by the worker of this injury. "[W]here the worker is aware he suffered an injury ..., but the *disability* does not occur until some time later, the limitations period begins to run after the occurrence of the disability, not on the date of the worker's awareness." *Salazar v. Albuquerque Tribune*, 107 N.M. 674, 676, 763 P.2d 690, 692 (Ct.App.1988); *accord Sedillo v. Levi–Strauss Corp.*, 98 N.M. 52, 53, 644 P.2d 1041, 1042 (Ct.App.1982) ("[E]ligibility under the ... Act is concerned with *legal* disability as statutorily defined...."). "Compensation is paid only when a work-related accidental injury becomes disabling." *Salinas–Kendrick v. Mario Esparza Law Office*, 1994 NMCA 080, 118 N.M. 164, 166, 879 P.2d 796, 798 (upholding a finding that a worker was not disabled during continued performance of pre-injury duties). Therefore, "[t]he employer cannot have failed or refused to pay compensation until such time as the injured" worker becomes disabled under the statute. *Gomez v. Hausman Corp.*, 83 N.M. 400, 401, 492 P.2d 1263, 1264 (Ct. App.1971); *accord Casias v. Zia Co.*, 93 N.M. 78, 80, 596 P.2d 521, 523 (Ct.App.1979) (opinion of Walters, J., Sutin and Hendley, JJ., concurring in result) (stating that "[c]ompensation is not payable until and unless a work-related accident produces an injury which becomes disabling" and that "[t]he statute of limitation does not begin to run when a non-disabling accident occurs"); *cf. Fuentes v. Santa Fe Pub. Sch.*, 1995 NMCA 090, 119 N.M. 814, 816–17, 896 P.2d 494, 496–97 (applying the doctrine of de minimis to a five-day period of temporary disability and implicitly recognizing that the statute of limitations does not run until a worker is disabled within the meaning of the Workers' Compensation Act). Thus, the statute of limitations cannot begin to run until such time as the worker is entitled to benefits under the Act, and the worker knows or should know of the injury.

■ (12) The statute of limitations was tolled for a maximum of one year during the time Torres continued working at Plastech after Plastech refused or failed to pay compensation due under the Act. As a result, Torres's claim is only barred by the statute of limitations if she failed to file her claim within one year and thirty-one days from the date she became entitled to disability benefits under the Act, plus any time during which the statute was tolled from continued employment. Torres filed her claim on March 28, 1995. If the statute of limitations began to run more than one year and thirty-one days before March 28, 1995, then Torres's claim would be untimely. However, because Torres did not cease employment with Plastech until October 29, 1994, the statute of limitations would have been tolled for an additional year. Therefore, subtracting two years and thirty-one days from the date of filing, we must determine whether there is substantial evidence that Torres knew, or should have known, of her injury and that Torres was entitled to compensation before February 26, 1993.

■ (13) Conclusions of law must be supported by findings of ultimate fact. *Watson Land Co. v. Lucero*, 85 N.M. 776, 777, 517 P.2d 1302, 1303 (1974) ("[A] judgment cannot be sustained on appeal unless the conclusion on which it rests finds support in one or more findings of fact."); *see Normand ex rel. Normand v. Ray*, 109 N.M. 403, 409, 785 P.2d 743, 749 (1990) (" 'Ultimate facts' are those facts which are essential and determinative facts upon which the trial court's conclusions are based."); Rule 1–052(B)(1)(b) NMRA 1997 ("The findings of fact shall consist only of such ultimate facts as are necessary to determine the issues in the case, as distinguished from evidentiary facts supporting them."). The WCJ made a conclusion of law *without* making the necessary finding of ultimate fact. The WCJ concluded that Torres was not entitled to benefits as a matter of law because "Worker knew or should have known she had a compensable claim in November of 1991." However, the WCJ decid-

ed that "[i]ssues concerning disability are not addressed because the Court finds Worker's claim is barred by the statute of limitations." We cannot reconcile these two statements. In light of our earlier discussion, we believe that the WCJ could not correctly determine Torres's knowledge or imputed knowledge of a compensable claim *without* deciding "issues concerning disability." Despite the lack of findings with regard to disability, we will evaluate the other findings of fact and draw reasonable inferences in order to determine whether there is substantial evidence to support the conclusion that the statute of limitations bars Torres's claim.

(14) There are four forms of disability under the Workers' Compensation Act. Permanent total disability is the "permanent and total loss of use of both hands or both arms or both feet or both legs or both eyes or any two of them." NMSA 1978, § 52–1–25(A) (1991). Temporary total disability is "the inability of the worker ... to perform his duties prior to the date of his maximum medical improvement." NMSA 1978, § 52–1–25.1(A) (1991). Permanent partial disability is "a condition whereby a worker ... suffers a permanent impairment." NMSA 1978, § 52–1–26(B) (1991). Finally, a scheduled injury is "the loss or loss of use" of "specific body members" as articulated by the statute. NMSA 1978, § 52–1–43(A) (1987).

■ (15) In order to support the WCJ's conclusion that Torres's claim is barred by the statute of limitations, there must be substantial evidence that Torres suffered from one of the four compensable forms of disability before February 26, 1993, two years and thirty-one days prior to Torres's filing of her claim. Looking at the first of the four types of disability, it is clear that Torres did not suffer from permanent total disability before February 26, 1993, or at any other time. While her injury did affect both hands, it was neither permanent, at any time, nor total before February 26, 1993. Torres continued to work until 1994 despite this injury, and the record demonstrates that Torres has now returned to employment after successful surgery correcting the carpal tunnel syndrome. We cannot find substantial evidence of a permanent total disability to support a finding of a disability in 1991 or any other time prior to Torres's filing of the claim.

(16) With respect to the second statutory form of disability, Torres was not entitled to temporary total disability benefits before February 26, 1993. Under the statute, temporary total disability is only available if the worker is unable "to perform his duties." Section 52–1–25.1(A). According to the record, Torres continued to perform all of her pre-injury duties at Plastech until October 1994. If a worker continues to perform all of the duties of the pre-injury position without assistance and without a reduction in pay, the statute does not provide for compensation. *See* § 52–1–25.1(B) ("If ... an injured worker's health care provider releases the worker to return to work and the employer offers work at the worker's pre-injury wage, the worker is not entitled to temporary total disability benefits."); *Sedillo,* 98 N.M. at 53–54, 644 P.2d at 1042–43 (concluding that the statute of limitations did not commence while worker continued to perform all pre-injury job duties). Because Torres could not qualify for temporary total disability benefits until 1994, there was not substantial evidence to support a finding of temporary total disability that would serve to bar Torres's claim under the statute of limitations.

(17) Similarly, Torres was not entitled to benefits for the third form of disability, permanent partial disability, before February 26, 1993. Under Section 52–1–26(B), partial disability is only available if a worker suffers from "a permanent impairment." Unlike temporary total disability, a worker who continues to perform all pre-injury duties at a pre-injury wage still may be entitled to partial disability benefits. *See* § 52–1–26(D) ("If ... an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his impairment...."); *Fuentes,* 119 N.M. at 816, 896 P.2d at 496 (discussing the difference between temporary disability and partial disability under the 1991 Act). *But see Tafoya v. Leonard Tire Co.,* 94 N.M. 716, 717, 616 P.2d 429, 430 (Ct.App.1980) (interpreting a prior version of the Workers' Compensation

Act and stating that "[p]hysical impairment does not automatically equate with disability").

(18) The Court of Appeals concluded that the WCJ may have inferred "that the pain was a symptom of an impairment." *Torres,* NMCA 17,246, ¶ 2. As a result, the Court of Appeals determined that there was substantial evidence of disability. In addition, Plastech asserts that *ABF Freight System* and *Benavidez v. Bloomfield Municipal Schools,* 1994 NMCA 023, 117 N.M. 245, 248, 871 P.2d 9, 12, support the Court of Appeals' conclusion. We disagree and conclude that there was not substantial evidence to support an inference of impairment as that term is defined in the Worker's Compensation Act under permanent partial disability, and this conclusion does not conflict with our holding in *ABF Freight System* and the Court of Appeals' interpretation of that case in *Benavidez.*

(19) These two cases are distinguishable on three grounds. First, in both *ABF Freight System* and *Benavidez,* the workers' injuries required an initial stay in a hospital and absence from employment before the workers were able to return to work. *ABF Freight Sys.,* 99 N.M. at 260, 657 P.2d at 116; *Benavidez,* 117 N.M. at 248, 871 P.2d at 12. These cases did not address a situation, like the one before us, in which the worker's injury did not, at any time, require absence from employment. *Cf. Sedillo,* 98 N.M. at 54, 644 P.2d at 1043.

(20) Second, Torres's claim is factually distinct from those in *ABF Freight System* and *Benavidez.* In *ABF Freight System,* we concluded that there was substantial evidence for a judge to determine that the statute of limitations barred the worker's claim. We specifically noted that the "[p]laintiff had a disability." *ABF Freight Sys.,* 99 N.M. at 260, 657 P.2d at 116; *see also Benavidez,* 117 N.M. at 248, 871 P.2d at 12 ("We consider these facts as substantial evidence to support the judge's decision that Worker knew or reasonably should have known she had a disability...."). In both *ABF Freight System* and *Benavidez,* there was substantial evidence of a diminished capacity to perform the workers' pre-injury duties in order to

justify a finding of partial disability. By contrast, while Torres worked with pain, "there is not an iota of evidence in the record to indicate that plaintiff did less work or put in fewer weekly hours after the accident than before." *Sedillo,* 98 N.M. at 54, 644 P.2d at 1043; *accord Salazar,* 107 N.M. at 676–77, 763 P.2d at 692–93.

(21) Finally, the legal analysis of partial disability has changed. *ABF Freight System* and *Benavidez* were decided under prior versions of the Workers' Compensation Act, which defined partial disability in a different manner. Specifically, these prior versions did not include the current definition of impairment and, instead, referred to the worker's capacity to perform suitable work. *See* NMSA 1978, § 52-1-26(B) (1989, prior to 1991 amendment); N.M. Laws 1965, ch. 295, § 19 (repealed by 1986 N.M. Laws, ch. 22, § 5). Under the 1991 version of the Workers' Compensation Act, the Legislature has defined impairment as "an anatomical or functional abnormality existing *after the date of maximum medical improvement* as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American [M]edical [A]ssociation's guide to the evaluation of permanent impairment." NMSA 1978, § 52-1-24(A) (1991) (emphasis added). There was testimony that Torres had a 12% impairment rating under the AMA guide, but this conclusion was limited to the time after maximum medical improvement. The WCJ made no finding of impairment based on the AMA guide, and neither party presented any evidence of pre-1995 impairment under the AMA guide.

(22) In any event, regardless of testimony concerning the date of impairment, the Legislature clearly limited the definition of impairment for permanent partial disability to the time "*after* the date of maximum medical improvement." Section 52-1-24(A) (emphasis added). In the order, the WCJ noted that the parties stipulated that "Worker has reached maximum medical improvement," without specifying the date on which this occurred. However, even under Plastech's requested findings, Torres did not reach maximum medical improvement with respect

to either hand until 1995. Therefore, because Torres could not have received permanent partial disability benefits until maximum medical improvement in 1995, there is not substantial evidence to support a finding of entitlement to partial disability benefits before February 26, 1993. As a result, the WCJ could not have relied on permanent partial disability as an ultimate fact supporting the conclusion that Torres's claim is barred by the statute of limitations.

(23) From the record, we cannot conclude that Torres was entitled to benefits for a scheduled injury, the fourth form of disability under the Act, before February 26, 1993. In order to receive benefits for a scheduled injury, a worker must suffer from a loss of use or partial loss of use of a specified member of the body under Section 52–1–43. Similar to permanent partial disability, a worker may be entitled to compensation for a scheduled injury even if the worker continues to perform all pre-injury duties at the pre-injury wage. *See* Section 52–1–43(A) (providing benefits for the loss or loss of use of a specified body member and not referring to capacity to work); § 52–1–43(B) (providing partial benefits for the partial loss of use of a specified body member). A worker will receive scheduled injury benefits if he or she suffers from a physical impairment which creates neither a total disability nor a separate and distinct injury to a non-scheduled member. *See American Tank & Steel Corp. v. Thompson,* 90 N.M. 513, 515, 565 P.2d 1030, 1032 (1977).

(24) In order to demonstrate an impairment under the scheduled injury section, it is not necessary to present evidence conforming to the AMA guidelines under the definition of impairment in Section 52–1–24(A). *Lucero v. Smith's Food & Drug Ctrs., Inc.,* 1994 NMCA 079, 118 N.M. 35, 36–38, 878 P.2d 353, 354–56 (distinguishing between impairment as defined in Section 52–1–24(A) and impairment under the scheduled injury section). Rather, an impairment for scheduled injury purposes "is an infirmity or defect that limits the physical functioning of the worker's body." *Twin Mountain Rock v. Ramirez,* 1994 NMCA 020, 117 N.M. 367, 369, 871 P.2d 1373, 1375 (Ct.App.1994).

There must be sufficient evidence for a workers' compensation judge to determine a total loss of use or "the degree of such partial loss of ·use" of the scheduled member. Section 52–1–43(A), (B). In evaluating the loss of use, however, it is not necessary to consider "the occupation of the worker and how the loss of the specific member of the body may affect his or her ability to perform the duties of his or her job." *Hise Constr. v. Candelaria,* 98 N.M. 759, 760, 652 P.2d 1210, 1211 (1982). Thus, in order to trigger the statute of limitations, a worker must know or have reason to know that he or she suffered an injury which limits or makes useless one of the body members listed in Section 52–1–43. *See Romero v. American Furniture Co.,* 86 N.M. 661, 663, 526 P.2d 803, 805 (Ct.App. 1974) ("A workman would be on notice of a compensable scheduled injury when it becomes or should reasonably become apparent to him that he suffered 'a partial loss of use' of the scheduled body member.").

(25) The WCJ did not find that Torres suffered from an impairment in 1991. In fact, the WCJ implicitly refused to address the issue of scheduled injury by specifically declining to address all issues concerning disability. As a result, there are insufficient findings of fact to support a bar of Torres's claim under the statute of limitations based on a scheduled injury. Further, there is not substantial evidence of an impairment before Torres left work in 1994 to allow a reasonable inference of scheduled injury. The evidence that Torres dropped objects at home and at work because of the injury could serve as a foundation for demonstrating an impairment. However, without more, this evidence is insufficient to permit a reasonable inference of a partial loss of use to any particular degree. Torres's medical expert testified that she had a 12% impairment rating, but this conclusion was limited to the time after maximum medical improvement in 1995. Plastech's expert testified that Torres was not impaired to any extent after maximum medical improvement. Neither party presented substantial evidence of impairment occurring prior to October 1994. In the record before us, there is simply an insubstantial amount of evidence to support a finding

of impairment or partial loss of use of Torres's wrists before she left work in 1994. *See Romero,* 86 N.M. at 662, 526 P.2d at 804 (relying on evidence of pain and a finding of impairment based on medical testimony of a twenty-five percent limitation of motion in worker's elbow in order to support a conclusion that worker's claim was barred under the statute of limitations). The WCJ specifically refused to address the issue of scheduled injury and could not reasonably have found an impairment to any particular degree before 1994. Therefore, the scheduled injury section could not supply the basis for the conclusion that Torres's claim was barred under the statute of limitations.

(26) By deciding that there is insufficient evidence of a scheduled injury for purposes of the statute of limitations, we do not foreclose any determination of whether Torres's alleged impairment in 1994 or 1995 constitutes a scheduled injury. One issue identified by the WCJ was "[w]hether Worker is only entitled to scheduled injury benefits." Based on our conclusion that the statute of limitations was not triggered by a scheduled injury in 1991, we believe that there is an insufficient foundation contained in the record to warrant a discussion of whether bilateral carpal tunnel syndrome should be classified as a scheduled injury. *Compare Jurado v. Levi Strauss & Co.,* 1996 NMCA 112, ¶ 12, 122 N.M. 519, 927 P.2d 1057 (reversing a finding of permanent partial disability based only on injuries to scheduled members), *and Jurado v. Levi Strauss & Co.,* 1995 NMCA 169, 120 N.M. 801, 802, 907 P.2d 205, 206 ("The primary diagnosis ... was bilateral carpal tunnel syndrome."), *cert. denied,* 120 N.M. 715, 905 P.2d 1119 (1995), *with Murphy v. IBP, Inc.,* 240 Kan. 141, 727 P.2d 468, 470–71 (1986) (concluding that bilateral carpal tunnel syndrome developed or aggravated simultaneously in two parallel extremities was not a scheduled injury). "[T]he Supreme Court on appeal will not originally determine the questions of fact in a case since such function lies entirely within the province of the trial court...." *Watson Land Co.,* 85 N.M. at 778, 517 P.2d at 1304. We leave the initial resolution of this issue to the WCJ.

(27) Having reviewed the WCJ's findings of fact and conclusions of law, as well as the record before us, we conclude that there is insufficient evidence to support a finding that Torres was entitled to disability benefits before February 26, 1993. As a result, the statute of limitations does not bar Torres's claim, and we must reverse the WCJ's order.

IV.

(28) The WCJ in 'this case failed to make a finding of ultimate fact, a finding of disability, required for a conclusion of law regarding the statute of limitations. While we have indulged all reasonable inferences in favor of supporting the WCJ's conclusion, we believe there is not substantial evidence supporting Torres's entitlement to any particular form of disability compensation before February 26, 1993. Torres's claim is not barred by the statute of limitations. Therefore, we reverse the order and the affirmance by the Court of Appeals, and we remand for a determination of Torres's entitlement to workers' compensation disability benefits.

(29) **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, J., concur.

