This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39277**

**MARK PLOMER,**

Worker-Appellee,

v.

**WORKERS' COMPENSATION ADMINISTRATION and NEW MEXICO RISK MANAGEMENT DIVISION,**

Employer/Insurer-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry Kramer, Hearing Officer**

Gerald A. Hanrahan
Albuquerque, NM

for Appellee

Paul L. Civerolo, LLC
Paul L. Civerolo
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** The Workers' Compensation Administration (Employer) appeals an amended compensation order awarding benefits to its employee, Mark J. Plomer (Worker). Employer argues that (1) the order is final for appeal; (2) Worker failed to provide Employer with timely notice of the accident under NMSA 1978, Section 52-1-29(A) (1990); and (3) the Workers' Compensation Judge (WCJ) erred in finding that Dr. Drew

Newhoff, from whom Worker obtained treatment, was an authorized healthcare provider (HCP) and by admitting his testimony on causation. We affirm.

## DISCUSSION

### I. The Amended Compensation Order Is Final for Appeal

**{2}** As a threshold matter, we briefly consider whether the WCJ's order is final and therefore appealable. In the order, the WCJ concluded that Worker's claim for indemnity benefits was "premature," presumably because the WCJ also found that Worker had not reached maximum medical improvement—a prerequisite for entitlement to such benefits. *See* NMSA 1978, § 52-1-26 (2017).

**{3}** Because this Court's jurisdiction is limited to review of final orders, *Sanchez v. Bradbury & Stamm Const.*, 1989-NMCA-076, ¶¶ 10, 14, 109 N.M. 47, 781 P.2d 319, we initially expressed reservations about reviewing an order that could be considered non-final due to Worker's unresolved indemnity benefits claim. Accordingly, we asked the parties to brief the issue. Employer argues, and Worker concedes, that the order is final for appeal.

**{4}** While we are not bound by Worker's concession, *see Tucson Elec. Power Co. v. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 10, 456 P.3d 1085, we accept it under the circumstances. The WCJ determined all issues of law and fact—including timely notice and causation—to the fullest extent possible to determine that Worker sustained a compensable injury. *See B.L. Goldberg & Assocs., Inc. v. Uptown, Inc.*, 1985-NMSC-084, ¶ 3, 103 N.M. 277, 705 P.2d 683 (explaining that an order is considered final where "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible"). In view of this and given the issue of indemnity benefits is premature, we do not believe that this remaining issue destroys finality in this case because its resolution would not alter, moot, or revise the WCJ's underlying determination that Worker sustained a compensable injury. *See Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 21, 113 N.M. 231, 824 P.2d 1033 (clarifying that "a question remaining to be decided [] will not prevent [a] judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein"); *cf. Alcala v. St. Francis Gardens*, 1993-NMCA-134, ¶¶ 7-8, 12, 11, 116 N.M. 510, 864 P.2d 326 (holding that, where there was a pending compensation claim, an interim order awarding attorney fees was not final for appeal because "developments in the compensation case [could] alter or revise the attorney fees order").

### II. Worker Provided Employer With Legally Adequate Notice

**{5}** Another threshold issue is whether Worker provided Employer with a timely notice of accident. When a worker fails to give timely notice under Section 52-1-29, the right to recover compensation is "forever barred." NMSA 1978, § 52-1-31(A) (1987). Towards this end, Employer asks this Court to reverse the WCJ's conclusion that

Worker provided Employer with legally adequate notice of the accident under Section 52-1-29(A). Because this conclusion of law must be supported by a finding of ultimate fact, *see Torres v. Plastech Corp.*, 1997-NMSC-053, ¶ 13, 124 N.M. 197, 947 P.2d 154; *see also Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 31, 137 N.M. 497, 113 P.3d 320 (characterizing the date of disability as an ultimate fact necessary to determine notice), we first review whether the WCJ's finding that Worker sustained a disabling work accident on March 18, 2019, is supported by substantial evidence. *See Tom Growney Equip. Co.*, 2005-NMSC-015, ¶ 13. Under this whole record standard of review, we view the evidence in the light most favorable to the agency decision but do not disregard contravening evidence. *Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 24, 148 N.M. 405, 237 P.3d 707. We then review de novo whether Worker gave timely notice under Section 52-1-29(A). *See Tom Growney Equip. Co.*, 2005-NMSC-015, ¶ 13.

**{6}** Employer argues that, because Worker sustained a previous work-related injury involving the same hand in 2009 and experienced numbness and tingling in that hand intermittently between 2009 and March 18, 2019, he is charged with knowledge that he sustained a compensable injury such that he should have notified Employer of that injury earlier than March 2019.[1] We disagree.

**{7}** In order to be eligible for workers' compensation, a worker must "give notice in writing to [the] employer of the accident within fifteen days after the worker knew, or should have known, of its occurrence." Section 52-1-29(A). Where "employment activity itself aggravates a preexisting injury and results in disability," as it did here, New Mexico precedent "does not require a discrete 'accident,' in the traditional sense." *Tom Growney Equip. Co.*, 2005-NMSC-015, ¶ 27. Instead, in such cases, a worker sustains an accidental injury if the worker (1) experiences preexisting conditions from a previous accident incurred during the worker's employment, (2) continues normal employment under pain, and (3) subsequently suffers a disability that was caused or accelerated while working. *Herndon v. Albuquerque Pub. Schs.*, 1978-NMCA-072, ¶ 31, 92 N.M. 635, 593 P.2d 470; *see also Tom Growney Equip. Co.*, 2005-NMSC-015, ¶¶ 28, 35.

**{8}** In this case, the WCJ's finding that Worker sustained a disabling work accident on March 18, 2019, is supported by substantial evidence. The WCJ found the following facts, which are unchallenged on appeal: Worker sustained a work-related accident in 2009, which involved his right wrist and hand; Worker received medical treatment for

---

1In making this argument, Employer relies on the "latent injury rule" from *Garnsey v. Concrete Inc. of Hobbs*, 1996-NMCA-081, 122 N.M. 195, 922 P.2d 577. We are not persuaded that this rule applies to the facts of the instant case. In *Garnsey*, the worker was involved in a work accident but did not discover the injury until later. *Id.* ¶¶ 2-4. In such cases, "the statutory clock [does] not start ticking until the worker [knows], or should [know] by the exercise of reasonable diligence, that [the worker] ha[s] sustained a compensable injury." *Id.* ¶ 12. "The injury, not the accidental occurrence, [is] determinative" for purposes of calculating the requisite notice period. *Id.* However, *Garnsey* is inapposite here because Worker did not sustain a latent injury. After the incident on March 18, 2019, Worker *immediately* discovered that he had suffered an injury that caused symptoms more severe and of a different character and quality than the occasional numbness and tingling sensations he had experienced before the incident such that he could no longer adequately perform necessary work activities. Under these circumstances, the latent injury rule does not apply.

this injury, which "resolve[d] the problems Worker was having with his right upper extremity"; Worker underwent an independent medical examination (IME) to evaluate the 2009 injury; the IME included a diagnosis of "early carpal tunnel syndrome" on Worker's right hand; Worker experienced occasional numbing and tingling in his right wrist and hand prior to March 18, 2019; Worker was physically able to perform all of his regular job duties prior to March 18, 2019; while performing work activities on March 18, 2019, Worker began to experience "pain, numbness, loss of sensation, and motor loss in his right hand"; these symptoms were "more severe and of a different character and quality than the occasional numbness and tingling sensations he had experienced previously as a result of these symptoms, Worker "could not adequately perform necessary work activities"; Worker received initial treatment, which indicated that these symptoms were consistent with carpal tunnel syndrome; Worker underwent electromyography, which confirmed that he sustained "mild to moderate carpal tunnel syndrome" on his right side; and Dr. Newhoff "offered a carpal tunnel release [procedure] at the right wrist."

{9}     This evidence suffices to show that Worker sustained an accidental injury on March 18, 2019, under the three-part test set forth in *Herndon*, 1978-NMCA-072, ¶ 31. First, Worker sustained early carpal tunnel syndrome from a previous work-related accident in 2009. Second, he continued normal employment under pain, experiencing occasional tingling and numbness in his right hand and wrist from 2009 to March 2019. Third, on March 18, 2019, he sustained a work accident involving the same hand to the point of disability, which was accelerated by his continued employment and concomitant work activities and resulted in a diagnosis of mild to moderate carpal tunnel syndrome on the right wrist. The aggravation of the injury caused by work activity amounted to the accident that triggered the notice requirement. *See Tom Growney Equip. Co.*, 2005-NMSC-015, ¶¶ 28, 35 ("This work-activity-induced aggravation of [the worker's] shoulder resulting in disability constituted the 'accident' for which [the worker] is required to give notice.").

{10}     It is true that, as Employer points out, Worker experienced "numbness and tingling . . . for months perhaps longer before[] March 2019." But it was the resulting disabling accident of March 18, 2019, that constitutes a work accident under our precedent. And, likewise, it may be true that Worker continued to work for Employer as the UEF Administrator after March 18, 2019, albeit in an abbreviated capacity. While this evidence might have supported contrary findings as to the date of disability, we conclude that the record contains substantial evidence to sustain the WCJ's finding that the date of disability was March 18, 2019. *See Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 25, 146 N.M. 453, 212 P.3d 341.

{11}     Because Worker sustained a disabling work accident on March 18, 2019, and because it is undisputed that Worker notified his supervisor of the accident on March 18, 2019, and then completed a written "Notice of Accident" report on March 19, 2019, which was signed by both Worker and Employer, we conclude that Worker provided Employer notice of the accident within fifteen days. *See* § 52-1-29(A). Accordingly, we hold that Worker provided Employer with timely notice.

### III.  Dr. Newhoff Is an Authorized HCP and the WCJ Properly Admitted His Testimony on Causation

**{12}**  Employer challenges the WCJ's conclusion of law that Dr. Newhoff was an authorized HCP. Reviewing this issue de novo, *Tom Growney Equip. Co.*, 2005-NMSC-015, ¶ 13, we affirm the WCJ's determination.

**{13}**  We note that Employer bases its claim of error on a misunderstanding of the law. Employer insists that "[t]here is no showing that Worker followed any of the health care provider procedures available after making his initial selection." This assertion presumes that *Worker* was required to adhere to the procedure after being denied coverage by Employer. However, it was *Employer*—as the party opposing Worker's initial selection of HCP—that lost the right to select an HCP after it denied coverage to Worker and subsequently failed to follow the HCP selection procedure.

**{14}**  We summarize this procedure. Under NMSA 1978, Section 52-1-49(B) (1990), after a worker has sustained an injury under the WCA, "[t]he employer shall initially either select the health care provider for the injured worker or permit the injured worker to make the selection." This initially selected HCP shall be in effect during the first sixty days from the date the worker *receives treatment* from that HCP. *Id.* The HCP may be changed in one of two ways. The first method assumes that the sixty-day period has been triggered: upon expiration of that period, the party who did not make the initial selection may file a notice of the name and address of its choice of HCP with the other party at least ten days before treatment begins. Section 52-1-49(C). Otherwise, the party disagreeing with the choice of HCP of the other party is relegated to the second method of changing an HCP: submitting a request for a change of HCP to a WCJ, which can be submitted at any time. Section 52-1-49(E).

**{15}**  In this case, Employer permitted Worker to make the initial HCP selection. Worker made the initial selection and chose Dr. Deana Mercer as his treating physician. However, Dr. Mercer never treated Worker: "When Worker attempted to see Dr. Mercer he learned that his claim of a compensable work[-]related injury was denied by [Employer's insurer] and that treatment through Dr. Mercer would not be authorized." Because Dr. Mercer never treated Worker, the sixty-day period under Section 52-1-49(B) was never triggered. Thus, the only way for Employer—as the party disagreeing with Worker's choice of HCP—to change the HCP was to submit a request to the WCJ, which it could have done at any point. *See* § 52-1-49(E). But the record is devoid of evidence that Employer actually did so.[2] In support of its argument, Employer points to case law holding that "an employer has the right to select a treating HCP for a worker even when the employer denies a worker's claim for benefits." *Grine v. Peabody Nat'l*

---

2The record indicates that Employer submitted an application to the WCJ for an IME on May 22, 2020, pursuant to NMSA 1978, Section 52-1-51 (2013). We do not consider this application as the equivalent to a request for a change in HCP. *Compare* §§ 52-1-51(A)-(B) (granting discretion to the WCJ to order an IME, which is to be performed by "a health care provider other than the designated health care provider" chosen from an approved list authorized by a committee), *with City of Albuquerque v. Sanchez*, 1992-NMCA-038, ¶ 18, 113 N.M. 721, 832 P.2d 412 (characterizing an objection to a new HCP as the equivalent to a request for a change to an initially-selected HCP).

*Res.*, 2006-NMSC-031, ¶ 3, 140 N.M. 30, 139 P.3d 190. However, Employer's interpretation of this rule is too broad. An employer has the right to select a treating HCP only if the employer complies with the procedure set forth in Section 52-1-49. *Grine*, 2006-NMSC-031, ¶ 3. By failing to properly submit a request for a change in HCP with the WCJ, Employer (not Worker) failed to follow the statutory selection procedure. As a consequence, we reject Employer's argument that it was Worker's burden to adhere to the statutory HCP selection procedure.

**{16}** Because we agree with the WCJ that Dr. Newhoff was an authorized HCP, and because it is undisputed that Dr. Newhoff treated Worker, we hold that the WCJ did not err in admitting his testimony on causation. *See* NMSA 1978, § 52-1-28(B) (1987) (mandating that a worker must establish causality by expert testimony of an HCP when an employer or insurance carrier denies that an alleged disability was a natural and direct result of the accident); *see also* § 52-1-51(C) (stating that only an HCP who has treated the worker under Section 52-1-49 or the health care provider providing the IME may offer testimony concerning the particular injury in question).

**CONCLUSION**

**{17}** We affirm.

**{18}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**GERALD E. BACA, Judge**